The automobile of Mr. Joseph A. Loret, a 1941 Special Deluxe two door Chevrolet, was involved in an accident on March 6, 1946. His wife, Mrs. Catherine Weber Loret, was driving the car, returning to their home which is situated on the Mississippi River Road, about six miles south of the City of Baton Rouge. It was about five o'clock in the afternoon and Mrs. Loret was returning home by the usual route they follow, that is, after leaving Nicholson Drive she entered a street known as McKinley Street which begins at a point east of the Yazoo Mississippi Railroad tracks and runs west towards the Mississippi *Page 56 
River Road. She had reached a point about 40 to 50 feet from the river road, intending to turn left into that road to go to her home when there was a collision between her car and a truck belonging to Armour Company which was being driven at the time by one of its employees, a negro named Ray Williams. Williams lived on Terrace Street, the next street south of McKinley Street, and he was on his way back to the place of business of his employer to deliver the truck as that is where it was kept after the day's work was over.
Claiming that the accident and damage to his automobile, as well as other items of damage he claims to have suffered, were caused by the negligence of the driver of the Armour truck, Mr. Loret instituted this suit to recover judgment against Armour Company and its liability insurer, Zurich General Accident 
Liability Insurance Co., Ltd., in the sum of $914.85. He charges the driver with driving the truck, at the moment of the accident, in a reckless and careless manner and at a rapid and excessive rate of speed; that after entering McKinley Street he kept his truck on the south side of the street instead of the north side where there was plenty of room for him to meet the automobile; that he either saw or should have seen the automobile travelling westward from the time it had crossed the railroad track and had he been keeping a proper lookout he would have avoided running into the automobile when it was on its right hand side of the street, which was the proper place for it to be.
He alleges that the driver of the truck was the agent, servant and employee of Armour Company and that at the moment when he ran the truck into the automobile he was its servant and employee, acting within the scope of his employment as such and in the exercise of the functions and duties of his employment.
The damages claimed are itemized in very minute detail by Mr. Loret and we will try to condense them as much as we can. The largest item is for depreciation of the value of his automobile. He had it repaired and put in running condition at a cost of $175.61, but these repairs did not include the replacement and repair of a ruined tire and wheel. He had to replace this tire with another at a cost of $7.50 and the broken wheel at a cost of $5. He claims however that the automobile never ran well again after the repairs had been made and that as it was absolutely necessary for him to have a car for use in business, he was obliged to trade it in and in the trade he received a credit of $210. He claims however that before the accident the car had a low ceiling price under the O.P.A. of approximately $800 and that consequently it had depreciated in an amount between what the ceiling price was and the amount he received as a credit in the trade for a new car which represented the sum of $590. He claims that as he was deprived of the use of his car during the time it was being repaired, that is between March 9, 1946, and March 14, 1946, inclusive, he had to hire taxicabs and this cost him $19.50. After March 19, 1946, his car was still laid up and instead of riding in public conveyances he hired an automobile by the week and that cost him $50.50, plus insurance which he had to place on that car at a cost of $14.48.
He also claims the sum of $49.66 which he says he incurred as doctor and medical bills in treatment of Mrs. Loret for injuries which he alleges were the result of the accident; also the sum of $2.15 which he had to pay a nurse for taking care of their two year old child on the occasions when Mrs. Loret had to visit the doctor's office.
The defendants filed a joint answer in which they denied the negligence charged against the driver of the Armour truck, as alleged, and in the alternative pleaded contributory negligence on the part of Mrs. Loret for having failed to keep a proper lookout in approaching the Mississippi River Road. As a special defense they plead that the driver of the Armour truck, though admittedly a servant and employee of the defendant Armour 
Company, had deviated from the course of his employment at the time of the accident and therefore the defendants cannot be held liable for his negligence in case any is shown. *Page 57 
After the trial of the case in the court below there was judgment in favor of the plaintiff awarding damages in the sum of $308.22. Defendants appealed, and plaintiff has answered the appeal asking that the damages be increased to the sum originally prayed for by him.
As will be noted from the foregoing statement, there are several points involved in the case, the first being the negligence charged against the driver of the defendant Armour truck, the second the contributory negligence of Mrs. Loret, the third the legal proposition presented in defendants' answer to the effect that there was a deviation by the employee from the scope of his employment, and the fourth, assuming that plaintiff is entitled to recover, the amount of the damages sustained.
[1] On the first point we find no difficulty in agreeing with the trial judge that the testimony strongly preponderates in favor of the plaintiff to the effect that the accident was caused by the negligence, and solely by the negligence, of the driver of the truck. The accident happened in the afternoon when it had been and probably was still raining a light drizzle. Mrs. Loret seems to have been very careful in her manner of approaching the river road in order to make her left hand turn to go south. She had just crossed the railroad tracks and, as she says, had slowed down in order to make the crossing. As it was only a few hundred feet from there to the river road she had not, as she says she never does, accelerated her speed. Her testimony is, and the physical facts as well as the position of her car after the accident all support her, to the effect that her car was on the right hand side of the road and that it was run into by the truck on its left front end. There is hardly any testimony to dispute these facts except that of the driver of the Armour truck who, hesitatingly, would now have it appear that Mrs. Loret's car occupied the center of the street when the collision took place. We say hesitatingly, because in a statement given by him to Mr. J.H. Percy, Jr., one of the plaintiff's attorneys, he had said that she was on her right hand side of the street and practically admitted that he had run into her car. He now tries to have the court believe that part of the statement was added after it had been written and he had signed it. Looking at the form of the hand written statement it would seem to be a physical impossibility for anything to have been added to it at the place where the questioned part of it appears and besides it could hardly be expected that the court would accept his word against that of a highly respectable attorney such as we consider Mr. Percy to be.
The position of the Loret car after the collision and the debris from the broken glass both prove conclusively that the impact took place on the right hand side of the street and that the truck driver was careless and negligent either in making his turn into that street or in straightening out his truck after he had made the turn.
The testimony shows he had an open view of McKinley Street as he approached it on the river road and he gives no reason why he did not see the Loret car except to further involve himself or his employer in negligence as the reason he surmises is that the windshield wiper was not working. Windshield wipers are used for the very purpose of permitting a driver to look ahead of him in weather such as the evidence shows existed that day and in running a truck without one, he and his employer, in permitting him to do so, were further guilty of negligence.
Under the view we take of the facts in the case concerning the negligence of the driver of the truck it is unnecessary to do more than state that there is nothing at all to indicate negligence on the part of Mrs. Loret and therefore the plea of contributory negligence avails the defendants absolutely nothing.
With regard to the special defense that the driver of the truck had deviated from his course of duty, we again agree with the trial judge in his decision of that issue.
From the facts on that point it appears that this driver had left his employer's place of business that morning with a load of merchandise to be delivered in Plaquemine. It took him the greater part of the day to do that even though he did not take time off in Plaquemine, or on the road, to *Page 58 
cat his lunch or dinner as under the rules of his employment he was permitted to do. Evidently he preferred to drive back to Baton Rouge and go to his home for dinner in the late afternoon for which purpose he drove his truck to Terrace Street where he lived. Terrace Street is south of the place where the Armour business establishment is in the city of Baton Rouge. After he had finished his meal, apparently he had considerable time ahead of him before returning the truck to his employer's place of business and instead of turning north from Terrace Street and thereby taking a shorter route, he turned south on the river road in order to go to McKinley Street from where he would get on Nicholson Drive which is a paved highway leading into the city. It seems to be admitted that this driver was within his right in having gone home for his dinner and that until he had delivered the truck back to his employer's place of business he was acting within the course and scope of his employment. However it is charged that when he turned left and went south, and therefore chose a longer route back to the place of business instead of having gone by the shorter route, he deviated from his line of duty and as he did so in order to "kill time" as the expression is used, he had started on a mission of his own and the accident having happened during that period of deviation, the employer is released from liability.
The distinction which is sought to be drawn on this legal point appears to us to be very narrow indeed and cannot stand for two reasons; First, conceding that the route which the employee chose was the longer, it nevertheless developed that it was the better one as he shortly would have been on a paved highway and second, no matter what route he chose, his purpose, and the only purpose he could have had in mind at that time, was to return the truck to his employer's place of business and it could make no difference in the accomplishment of that purpose whether he chose the longer route by a better road or the shorter route and idled along the highway. If by going on a different route he had had some other object or motive pertaining to himself to fulfill it might be said that there would have been a deviation; but his purpose in starting out was always the same and that was to return this truck back to his employer's place of business which it was his duty to do.
[2, 3] We believe that the rule laid down for the purpose of construing this point of law, as pointed out in Tulane Law Review, Vol. 14, p. 72, and applied in the case of Warnick v. Louisiana Highway Commission, La. App., 4 So.2d 607, is sound and can be appropriately used here. It involves three elements, the first being that the trip on which the employee is engaged at the time must have had its origin in his employer's business, second, the mental purpose of the employee following any deviation he may have made must be to return to his next duty whether it be to continue his work or to return the vehicle of the employer to the place of business, and third, the purpose to return must have been put into effect by starting the return journey. All three elements appear significantly in this case and we thoroughly agree with the trial judge in holding that this employee, at the time of this accident, was engaged in the course and scope of his employment and consequently his employer has to be held liable under the doctrine of respondeat superior.
That brings us now to the consideration of the damages and the awards made by the trial judge. The items which were rejected by him were those for the depreciation of his car claimed by plaintiff, the item of $14.48 for insurance plaintiff carried on the automobile which he had rented while his car was being repaired and $2.15 for nursing his child while his wife visited the doctor's office. These are the items which the plaintiff seeks to be awarded in his answer to the appeal. Counsel for defendants maintain, in case there is liability, that the items rejected by the trial judge were all correctly disallowed and contend further that he should have disallowed the item of $20 for medical examination and $15 for x-ray for an alleged back injury sustained by Mrs. Loret because there is nothing in the record to connect such an *Page 59 
injury with the accident. Otherwise they seem to concede, granting there is liability, that the items allowed were properly awarded.
The largest item rejected is the one for depreciation of his automobile, the testimony on which is, in effect, as follows: The automobile was in good running order prior to the accident and although it had been used for five or six years and the paint and upholstery were worn a bit, still mechanically it was performing satisfactorily. Plaintiff evidently thought that the car could be put in the same condition it was before the accident since he spent $175 to have it repaired. By his testimony, and we would say that no one could say better than he, in that respect, the car never performed as well after it was repaired, as it did before the accident. It is true that he did not take it to a mechanic but he testified that a negro who worked for him knew a lot about automobiles, that he worked on it and apparently he would get the car to run. It got out of order so frequently however the plaintiff concluded it could no longer serve its purpose and he decided that he would have to replace it with a new car. He ran into the same difficulties and delays that all people do these days to get a new car but finally prevailed on Brame Carter, Plymouth dealers in Baton Rouge, to let him have a new Plymouth on a trade-in. He says that he was very satisfied to get a trade-in value of $210 on his car, appreciating as he did, the condition it was in. It is shown that at that time the ceiling price fixed by the O.P.A. on cars of the model of his was $800 and as a matter of fact, the party to whom Brame Carter sold the car, subsequently sold it to another party for $786.80.
[4] As stated plaintiff says he considered himself lucky to have obtained a trade in value of $210, and Mr. Carter of Brame Carter testified that that was its value at the time of the trade-in, adding that it was in a bad condition mechanically. The district judge has to say that the plaintiff is not an automobile expert, from which it is to be inferred that he would not know much about values, but that certainly cannot apply to Mr. Carter who is an automobile dealer and who testified that $210 was the value of the car. Naturally, if the ceiling price placed on the automobile was $800 and to an automobile dealer, as well as to the owner, it was not worth more than $210 after having been involved in an accident because it was mechanically "beat up," it strikes us that the car had depreciated the difference between the ceiling price fixed by a government agency and its actual value which is the sum of $590. Undoubtedly under the evidence before us, that depreciation was caused by this accident since the car operated so satisfactorily before and so badly thereafter and therefore we hold that plaintiff is entitled to recover on this item.
[5] Another item rejected by the trial judge on which we do not agree with him is the one for $14.48 paid by plaintiff to carry insurance on the car he rented while his car was laid up for repairs. The reason for disallowing this item seems to be that plaintiff carried such insurance on his automobile and it is stated that that policy also covered the car he had rented. We find nothing in the record which tends to prove that, and Mr. Loret, an attorney well versed in this branch of law, testified that he had no idea that his policy covered this car he had hired. We feel sure that if he thought it did, he would not have gone to the expense of paying $14.48 for another policy which gave him no more protection than the one he had already paid for. This item also will be allowed.
[6] The last item of $2.15 for nursing of the child which was rejected by the trial judge is one which, we agree, seems to be a bit too remote and we think was properly disallowed.
[7] The items which counsel for defendants now claim should have also been rejected are those incurred by Mr. Loret for having his wife examined for an alleged back injury. From the testimony it appears that about a week after the accident Mrs. Loret began to feel a backache and as she had never suffered any before the accident, it would look natural that they might have suspected that the *Page 60 
accident had something to do with it. She consulted Dr. Kern who found it necessary, in order to make a report to her, to have an x-ray made. His advice at the time he made his report was not to do anything about it right then. True it is that from his report he did not directly connect her complaint with any injury she might have sustained in the accident, but it is equally true, as far as the evidence shows, he did not convey the impression that it was not probably the result of such an injury. Under the circumstances under which her suffering arose it would seem logical for them to have had a suspicion that it was produced by the accident. We think her husband was within his rights in having her examined by a physician and in charging the defendants with the examination as an item of damage suffered by reason of this accident.
For the reasons stated it is ordered that the judgment appealed from be amended by increasing the amount of the award from the sum of $308.22 to the sum of $912.70 and that as thus amended it be affirmed.
The defendants are to pay the costs of this appeal.