Mary V. NEWSOM and Donald G. Newsom, Sr.; Donald G. Newsom, Jr., and Dawn Newsom, Minors by next friend Donald G. Newsom, Sr., Plaintiffs-Appellants,

v.

Sidney MARKUS, Defendant-Appellee.

Court of Appeals of Tennessee,
Western Section.

July 26, 1979.

Certiorari Denied by Supreme Court
Oct. 22, 1979.

James R. Ralph, Memphis, for plaintiffs-appellants.

Neely, Green & Fargarson, Memphis, for defendant-appellee.

MATHERNE, Judge.

The plaintiff, Mary V. Newsom, accompanied by the minor children, Donald G. Newsom, Jr., and Dawn Newsom, was driving her automobile south on White Station Road when the defendant, Sidney Markus, traveling in the same direction pulled partly out of his lane of traffic and the left bumper of his vehicle scraped down the right side of the plaintiff's vehicle.

The plaintiff and the two minor children sued for damages due to personal injuries allegedly received in the collision, and the plaintiff Donald Newsom, Sr., the husband of Mary V. Newsom, sued for medical expenses incurred on behalf of his wife and children and for loss of consortium of his wife and loss of services of his children. The lawsuits brought by the two minor children were settled prior to trial, leaving only the lawsuits brought by Mary V. Newsom and her husband, Donald G. Newsom, Sr., to be tried.

The trial judge, with the consent of the defendant, directed a verdict in favor of the plaintiff on the issue of liability and charged the jury to return their verdicts in the following form:

In the first case you will return your verdict: We the jury find for the plaintiff, Mary V. Newsom, and assess her damages at so much, naming the amount in dollars and cents.

In the second case your verdict should read and be endorsed on the jacket: We the jury find for the plaintiff, Donald G. Newsom, Sr., and award his damages at so much, naming the amount in dollars and cents.

The jury returned the following verdicts:

We, the jury, find for the plaintiff, Donald G. Newsom, Sr., and assess his damages in the amount of $950.00.

We, the jury, find for the plaintiff, Mary V. Newsom and assess her damages no dollars.

Judgments were entered on the verdicts, and, after their motion for a new trial was overruled, the plaintiffs appealed and properly raise the following issues: (1) the verdicts are inadequate; (2) the verdicts are contradictory; (3) the court improperly admitted evidence that Mary V. Newsom was totally temporarily disabled at the time of the collision; (4) the court erred in giving certain instructions and refusing others on the measure of damages where the issue is the aggravation of a pre-existing injury or physical condition; and (5) the court erred in refusing to furnish the jury with the specific amounts of medical expenses when the jury requested that information during its deliberations.

The facts of the collision need not be dwelt upon except as those facts might reflect upon the personal injuries claimed by Mrs. Newsom. In this respect the record

reflects that the impact was slight with little damage to the vehicles.

Mrs. Newsom has a history of trouble with her back. In 1955, she injured her back while working at Walgreen's and disc surgery was performed by Dr. Robert Raskind. While working at Montesi's in 1971, she slipped and fell on the floor. As result of that fall she had disc surgery by Dr. D. J. Canale. In September 1975, while working at Boise Cascade, her back began bothering her. She was hospitalized and on October 13, 1975, a spinal fusion was performed by Dr. D. J. Canale and Dr. Daniel J. Scott, Jr.

Mrs. Newsom testified that she thought she was recovering from the spinal fusion, but the testimony of her doctors refutes that contention. Her testimony is rather conflicting on that point in that she claims that after the automobile accident on April 15, 1976, she could not do her housework as before and that she experienced pain in an area of her back above the spinal fusion which she had not previously felt. She testified on direct examination as follows:

Q. Mrs. Newsom, since the automobile accident in April of 1976, have you had any problems with the lower portion of your back where the fusion took place?
A. No, Sir, I have not.
Q. Since the April, 1976 automobile accident, have you at any time been able to go back to the activities that you enjoyed back *before September of '75*? (Emphasis added)
A. No, sir, I have not.
Q. Okay. Can you tell us any things, any particular activities that you have, entertainment or work or any type of activities that you could partake in at that time and cannot partake in at this time?
A. I used to enjoy dancing and I can't do that any more. And I used to enjoy just walking and shopping and I can't do that any more.
Q. All right.
A. I used to could clean the house and I can't do that any more.
Q. Who has been cleaning the house?
A. My sixteen year old daughter.

Q. All right. Are you able to participate in that at all?
A. I help, but I can't do it all by myself. She has to do most of it.
Q. All right. And what was your situation as far as housework *back before September of '75*? (Emphasis added)
A. *Before I had the fusion*, I did all my housework, I could do the cleaning and the cooking and the scrubbing or whatever I had to do. I could even run the vacuum cleaner. Now, I can't do any of that at all. (Emphasis added)

Mrs. Newsom testified that she returned to her employment eleven months after the automobile accident and that she is now working full time eight hours a day, five days a week.

Dr. Daniel Scott, an orthopedic surgeon in Memphis, Tennessee, testified that on October 13, 1975, he did the spinal fusion on Mrs. Newsom. She was sent home on October 24th and told to return in six weeks. She returned on the 12th of December, again on January 26, 1976, and on March 8, 1976. She gave him the history of having pain down the leg and across the back and up the end of the incision and above the right paravertebral muscle. He next saw her on April 26, 1976, for Dr. Canale who had hospitalized her after the automobile collision. He saw her on June 11, 1976, on July 23, 1976, and on September 24, 1976. He stated that the spinal fusion appeared solid and was progressing as expected. He said Mrs. Newsom complained of more pain since the accident. He was not asked and he ventured no opinion on whether Mrs. Newsom's condition was aggravated by the automobile collision. He wrote a letter in February 1976, two months before the collision, that in his opinion Mrs. Newsom would not be able to return to work for 12 months from that date. Mrs. Newsom did return to work about 11 months from that date.

Dr. D. J. Canale, a neurosurgeon in Memphis, Tennessee, testified that he first saw Mrs. Newsom in May 1971 at the request of Dr. Scott. At that time he did a myelogram that was normal. In July 1971 he and

Dr. Scott performed disc surgery on Mrs. Newsom, and she did well postoperatively. In September 1975, Mrs. Newsom came to him complaining of recurrent pain in the back going into the right extremity. At this time she had evidence of sciatica and she was hospitalized. She was treated conservatively and sent home. In October 1975, she was re-admitted and underwent a disc exploration and fusion. Dr. Canale followed up on her and made the following statement as to her condition as result of his examination of her on April 12, 1976, three days before the automobile collision:

> She was continuing to have pain even after her surgery. I followed her through April 12th, and at which time she was six months post-op. I stated at that time that as far as her back was concerned, she was a failure as far as her disc surgery and that she was still complaining of a lot of pain in the right lower extremity going into the foot and complained of pain in her incision, and I explained to her at this time that I didn't feel there was anything further from a neurosurgical standpoint to do for her.

> Then, I saw her back about two days later, she was involved in an automobile accident.

Dr. Canale saw Mrs. Newsom repeatedly during 1976. He admitted her to St. Joseph Hospital in September 1976 for traction, physical therapy and muscle relaxants. He saw her in October and November 1976, and in January 1977, her last visit being in April 1977. At the time he examined her after the accident he felt that she "had sustained an acute lumbo-sacral strain on an already irritable back. . . ." He stated that in his opinion "she probably had sustained an additional disability as a result of the accident in the range of ten per cent to the body as a whole. . . ." Dr. Canale also testified, as follows:

Q. Doctor, how would you describe this lady's back to the jury following that surgery in 1975?
A. Well, she was not helped by the surgery. She was still complaining. My notes indicate in April of 1976 *she was complaining as much as she was before surgery.* She was six months post-op, but she was still complaining. (Emphasis added)
Q. Doctor, the performing of the fusion by Dr. Scott was an operation that was designed to give her some relief from this pain that she was experiencing in her low back, was it not?
A. Yes, sir, it was.
Q. When you say the operation was a failure, you mean that neither the operation that you performed nor the fusion really helped her any?
A. Yes. To qualify that a little bit, what I really mean, as far as I was aware, the fusion took well, and there was no problem with the surgery, but our combined efforts had not relieved the patient's symptoms. (T.R. 181–182)

\* \* \* \* \* \*

Q. So I guess what I am really asking you about and what I want you to talk with the jury about here is is there any way that you could say with any degree of medical certainty that this lady would not have continued to have these complaints of pain even if she had not been involved in this accident?
A. There is no way I could say that, because she was having the pain when she had her accident. (T.R. 184–185)

■ We conclude that there is material evidence in the record from which the jury could find that Mrs. Newsom did not sustain any personal injury nor aggravation of a pre-existing condition as a result of the automobile collision caused by the defendant.

■ The plaintiffs challenge the verdicts in this case as being both inconsistent and contradictory. If, after an examination of the terms of the verdicts, the court is able to place a construction there on that will uphold the verdict, it is incumbent upon the court to do so. *Briscoe v. Allison* (1956) 200 Tenn. 15, 290 S.W.2d 864.

■ In challenging the verdict in the case of Mrs. Newsom, the plaintiffs rely upon *Clements v. Veterans Cab Co.* (1960)

48 Tenn.App. 152, 344 S.W.2d 572, wherein this Court held that in a personal injury action a jury verdict for the plaintiff with no damages awarded is internally inconsistent and erroneous on its face. In *Clements* the entire issue of a cause of action for damages due to personal injuries was submitted to the jury. That cause of action required proof of (1) a duty to the plaintiff, (2) breach of that duty by the defendant, and (3) resulting personal injury to the plaintiff. When the jury found for the plaintiff it resolved each of those issues in favor of the plaintiff including a finding of resulting personal injuries. It would, therefore, be incumbent upon the jury to find damages in some amount.

In the present lawsuit the entire cause of action was not submitted to the jury. The trial judge directed a verdict in favor of the plaintiff on the issue of liability, leaving to the jury to determine if the plaintiff suffered any personal injury, and if so to assess damages. This was proper because in order to support the action there must be not only the negligent act, but a consequential injury which is the gravamen of the charge of negligence. *Colsher v. Tennessee Electric Power Co.* (1935) 19 Tenn.App. 166, 84 S.W.2d 117. The fact that the issue of injury was left to the jury is shown by the following excerpts from the judge's charge:

At the end of all the proof in this cause the court has directed a verdict for the plaintiffs. That means to say that you have no issue in this case as to liability. The only issue in this case is the *nature and extent of the damage and injury.* (Emphasis added)

\* \* \* \* \* \*

Now since I have directed a verdict on the part of liability, your only question is to damages. Under our law a party who has been injured as a direct and proximate result of the negligent act of another is entitled to recover an amount of money that you say would fairly and adequately compensate him or her *for the injuries that you find were negligently inflicted upon him or her*, taking into consideration the nature and extent of

the injuries, their kind, character, and duration, the amount of mental and physical pain the plaintiff has suffered due to his or her injuries. (Emphasis added)

We, therefore, conclude that in the case of Mrs. Newsom the jury by its award of no damages found that Mrs. Newsom was not injured in the collision and that she did not suffer an aggravation of pre-existing injuries or disability. As heretofore noted there was material evidence before the jury upon which that finding could rest. It must be noted that the jury was directed to "find for the plaintiff" in each case. We, therefore conclude that the verdict in the case of Mrs. Newsom is not erroneous on its face.

■ The plaintiff argues that the verdicts are contradictory and inconsistent for the further reason that the award of damages to Mr. Newsom demands an award of damages to Mrs. Newsom. Under the facts, we disagree. We fail to find a reported Tennessee decision on the issue, but it has been held that a party is entitled to recover reasonable medical expenses for examinations, etc., in an effort to determine if personal injuries were sustained as result of defendants negligence, even though it develops that the party suffered no personal injury. See *Comstock v. Ramirez* (Tex.Civ. App.1975) 520 S.W.2d 475; *Wise v. Towse* (Mo.App.1963) 366 S.W.2d 506; *Loret v. Armour & Co.* (La.App.1947) 32 So.2d 55; *Whitney v. Akers*, 247 F.Supp. 763 (1965). Considering the fact that Mrs. Newsom was then recovering from a spinal fusion, temporarily totally disabled from her employment and complaining about pain in her back, it was reasonable for Mr. Newsom to take her to a hospital and have necessary examinations, X-rays and other diagnostic procedures to determine if she suffered injury in the collision. This expense flowed naturally from the tortious act of the defendant and is recoverable even though it be found by the jury that Mrs. Newsom in fact suffered no injury.

The record reveals that Mrs. Newsom was hospitalized from April 21, 1976 to April 28, 1976, and was seen by Dr. Scott

and Dr. Canale. The hospital bill was $807.45, Dr. Scott's bill was $30.00 and Dr. Canale's bill was $60.00 during this time. This results in a total amount of $897.75 incurred by Mr. Newsom to have Mrs. Newsom examined and evaluated as to injury caused by the collision. There are additional medical bills incurred after April 28, 1976, but those bills are not material to the issue at hand.

We note that the jury during its deliberation asked the trial judge for the exhibits reflecting medical expenses. The trial judge refused the request and told the jurors that they must do the best they could from what they remembered of that evidence. In civil cases the trial judge may, in his discretion, allow the jury to take the exhibits into the jury room for their consideration during deliberation. T.C.A. § 20–1332. We can not say that the trial judge abused his discretion in this respect.

The jury awarded Mr. Newsom $950 damages. We hold that this award is justified by the proof of medical expenses incurred for the initial examination and evaluation of Mrs. Newsom after the accident. We do not know that the jury made this award for that purpose. However, when we consider the jury's request for the medical expenses and the amount of the award, we can reasonably conclude that the jury meant to compensate Mr. Newsom for those expenses. The award exceeds the proven medical bills by only $52.25, which amount could be reasonably allowable as expenses of Mr. Newsom going back and forth from the hospital during those seven days that Mrs. Newsom was hospitalized. We, therefore, approve the verdict rendered in favor of Mr. Newsom.

The plaintiffs claim error wherein the trial judge permitted the cross-examination of Mrs. Newsom as to her pre-existing disability. The plaintiffs on direct examination brought those issues up and it was proper to allow the defendant to pursue this matter on cross-examination.

The complaints levied against the jury charge of the trial judge on the issue of the measure of damages applicable to Mrs. Newsom's injuries due to her pre-existing injury or disability are not here material. The jury found that Mrs. Newsom was not injured nor was her pre-existing injury or disability aggravated. The jury did not reach the issue of the amount of damages in her lawsuit and the charges given and refused, if erroneous, would have no bearing on the outcome.

It results that the judgment based upon each verdict is affirmed and this lawsuit is remanded to the trial court for the enforcement thereof. The cost in this Court is adjudged against the appellants.

SUMMERS and EWELL, JJ., concur.