IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 22, 2016 Session

**STEVEN KEMPSON, ET AL. v. PAMELA CASEY, ET AL.**

**Appeal from the Circuit Court for Hamilton County**
**No. 12C873, 12C1138      W. Neil Thomas, III, Judge**
_____

**No. E2015-02184-COA-R3-CV-FILED-NOVEMBER 2, 2016**
_____

Pickup truck driver sued to recover for injuries he allegedly sustained when his truck was rear-ended while he was stopped for traffic on the interstate.  His wife asserted that she had suffered from the loss of consortium with and services of her husband.  The defendant driver acknowledged responsibility for the collision but disputed that the plaintiffs had proven, by a preponderance of the evidence, that the accident in question caused any injury.  The jury found that the collision caused no damage to the plaintiffs.  On the jury's verdict, the trial court entered judgment, awarding the plaintiffs no damages and denying the motion for a new trial.  The plaintiffs appeal.  We vacate the trial court's judgment and remand for a new trial on damages alone.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which  D. MICHAEL SWINEY, C.J., joined, CHARLES D. SUSANO, JR, J., filed separate dissenting opinion..

Ashley L. Ownby, Cleveland, Tennessee, for the appellants, Steven Kempson, and Melanie Kempson.

Ronald D. Wells, Chattanooga, Tennessee, for the appellees, Pamela Casey, and Bradley H. Smith.

**OPINION**

**I. BACKGROUND**

This personal injury action arises out of a motor vehicle accident that occurred on October 14, 2011, in Chattanooga, Tennessee. The plaintiff, Steven Kempson, was traveling in his Toyota Tundra on I-24 at the East Brainerd exit. He was struck from behind by a Chevrolet van driven by the defendant, Pamela Casey. The van was owned by Ms. Casey's employer, Bradley Smith, the operator of a funeral transport service. Actions initially filed separately by Mr. Kempson and his wife, Melanie Kempson, against Ms. Casey and Mr. Smith were tried together before a jury on August 18-21, 2015.

Mr. Kempson testified that he had been stopped in heavy traffic on the interstate. Upon looking in his rearview mirror, he saw a van approaching at a "pretty high rate of speed." According to Mr. Kempson, the van was traveling at 50 m.p.h.; his vehicle was knocked forward 5 to 6 car lengths; despite traffic stopped in front of him, he did not hit the vehicle in front of him or the concrete barrier to his left; when he saw Ms. Casey after the accident, she was bleeding from her knee all the way down her shin; and he was able to drive his truck away from the accident scene. The Kempsons alleged that Ms. Casey negligently collided with their vehicle and that as a result of the accident, Mr. Kempson began experiencing intractable neck and low back pain that ultimately necessitated a three level cervical discectomy and fusion for cervical disc herniation and myelopathy on November 16, 2012.

Ms. Casey and Mr. Smith admitted to the collision but contended that the accident did not cause the injuries claimed by Mr. Kempson. Ms. Casey testified that she was going between 10-15 m.p.h. at the time of the accident; prior to the accident her attention was on the slowing traffic in front of her; the impact of the collision was "minor"; her van had an airbag that did not deploy; she had on long pants and was not bleeding from her knee as a result of the accident; and the van was driven from the scene. Ms. Casey and Mr. Smith asserted that Mr. Kempson has received treatment for neck pain since 2003 and that his complaints made before the accident were the same or similar to the complaints he made after it.

The Kempsons presented to the jury the testimony of Mr. Kempson's surgeon, Scott Hodges, D.O., and his treating chiropractor, Eric Gruber, D.C. Both providers testified that Mr. Kempson had preexisting complaints related to his cervical, thoracic and lumbar spine. Dr. Hodges related that his treatment of Mr. Kempson goes back to 1998, when a microdiscectomy at L4-5 and L5-S1 was performed. Dr. Gruber noted that his treatment of Mr. Kempson's neck and upper body began in 2001. His reports revealed that in 2006, Mr. Kempson had previously incurred neck pain after an automobile accident involving a rear-end collision. Both providers indicated that Mr. Kempson's post-accident complaints were

similar to pre-accident complaints. Dr. Hodges opined, however, that the accident at issue caused Mr. Kempson's medical condition to worsen to the point that surgery was necessary. Dr. Hodges noted as follows:

> [T]his gentleman clearly had spinal disorders of different types. You know, he's got some disc herniation in his low back. He's had some disc herniations in his thoracic spine. . . . [T]he spinal stenosis is a condition that many people have . . . It's preexisting . . . it's been developing slowly and gradually over a long period of time, but it doesn't have symptoms associated with it. . . . [I]t decreases the overall space that the[] nerves have to move in. . . .
>
> When you apply a mechanical force such as a motor vehicle accident on top of this preexisting condition, multiple things can happen. Since the disc is already weakened from the degeneration, it makes it easier for part of it to herniate. So some of it may herniate, as it appears to be the case here. . . ."

Dr. Hodges opined that Mr. Kempson is "physically unable to do even a sedentary level work secondary to his overall physical impairment, as well as the medications being required to control his overall pain." Ms. Casey and Mr. Smith did not present any independent medical or expert testimony, but they extensively cross-examined both Dr. Hodges and Dr. Gruber as to Mr. Kempson's pre-accident health condition.

On the special verdict form, the jury was asked: "Do you find the Defendant caused damage to the Plaintiffs?" The jury responded with a "No" and awarded no damages to the Kempsons. The trial court incorporated the verdict form into the judgment entered August 21, 2015, ordering that the Kempsons recover nothing. On September 18, 2015, the Kempsons filed a motion for new trial, which was denied by the trial court. In the memorandum and order filed on October 14, 2015, the trial court noted as follows:

> The Court has reviewed the motion and the opposition thereto and the Court's notes of the trial in this action. From the foregoing, there was complete disagreement between the parties as to the circumstances of the accident, [Mr. Kempson] having contended that [Ms. Casey] was traveling at 50 miles an hour and that she was bleeding after the accident, all of which was controverted by the testimony of [Ms. Casey] and, to a certain extent, common sense. Additionally, the property damage to the vehicles is inconsistent with the description of the circumstances of the accident. With respect to the damages alleged by the

Plaintiff[s], there was substantial evidence tendered with respect to the preexisting condition of [Mr. Kempson]. The Court is mindful of the reliance of the Plaintiffs upon *Reserve Life Insurance Company v. Whittemore*, 442 S.W.2d 266 (Tenn. App. 1996), regarding uncontroverted expert evidence of injury. In this case, however, not only were the facts regarding the circumstances of the accident in issue but also the effect of accident upon the prior existing condition of [Mr. Kempson]. With these mixed issues, the Court is unable to say that there was no material evidence in opposition to [Mr. Kempson]'s injuries.

A timely notice of appeal was thereafter filed by the Kempsons.

## II. ISSUES

The issues presented for review by the Kempsons are as follows:

I. Whether there was no material evidence to support the jury's verdict, requiring a new trial on the issue of damages.

2. Whether the trial court abused its discretion, where the trial court's memorandum and order denying the motion for new trial demonstrates that it misconceived and failed to perform its function as thirteenth juror.

## III. STANDARD OF REVIEW

As our Supreme Court has instructed:

An appellate court shall only set aside findings of fact by a jury in a civil matter if there is no material evidence to support the jury's verdict. Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006). In determining whether there is material evidence to support a verdict, we shall: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.,* 48 S.W.3d 698, 704 (Tenn. 2000)

- 4 -

> (citing *Crabtree Masonry Co. v. C & R Constr., Inc.,* 575 S.W.2d 4, 5 (Tenn. 1978)). "Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies." *Barnes*, 48 S.W.3d at 704. If there is any material evidence to support the verdict, we must affirm it; otherwise, the parties would be deprived of their constitutional right to trial by jury. *Crabtree Masonry Co.,* 575 S.W.2d at 5.

*Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009). Our Supreme Court has further provided:

> Where the trial judge has approved the verdict in its role as thirteenth juror—as the trial court did in this case—the Court of Appeals' review of the verdict . . . is limited to a review of the record to determine whether the verdict is supported by material evidence. *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980) . . . Material evidence is "evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Knoxville Traction Co. v. Brown*, 115 Tenn. 323, 331, 89 S.W. 319, 321 (1905). . . .

> The material evidence analysis is very deferential to the award by the jury and the judgment of the trial court when it affirms the verdict as the thirteenth juror. "It matters not a whit where the weight or preponderance of the evidence lies under a material evidence review." *Hohenberg Bros. Co. v. Mo. Pac. R.R. Co.,* 586 S.W.2d 117, 119–20 (Tenn. Ct. App. 1979). "It is simply a search of the record to ascertain if material evidence is present to support the verdict." *Id.* Because the material evidence standard lies at the foundation of the right to trial by jury, if there is material evidence to support a jury verdict, the appellate courts must affirm it. *See* Tenn. Const. art. I, § 6; *Truan v. Smith*, 578 S.W.2d 73, 74 (Tenn.1979) (quoting *D.M. Rose & Co. v. Snyder*, 185 Tenn. 499, 508, 206 S.W.2d 897, 901 (1947)); *Crabtree Masonry Co.,* 575 S.W.2d at 5; *City of Chattanooga v. Ballew*, 49 Tenn. App. 310, 316–17, 354 S.W.2d 806, 808–09 (Tenn. App. 1961); *see also Grandstaff v. Hawks*, 36 S.W.3d 482, 497 (Tenn. Ct. App. 2000) ("We have a duty to uphold a jury's verdict whenever possible.").

*Meals ex rel. Meals v. Ford Motor Co.,* 417 S.W.3d 414, 422-23 (Tenn. 2013) (some internal

citations omitted).

With regard to a motion for new trial, this court has explained:

> A trial court is given wide latitude in granting a motion for a new trial, and a reviewing court will not overturn such a decision unless there has been an abuse of discretion. *Mize v. Skeen*, 63 Tenn. App. 37, 42-43, 468 S.W.2d 733, 736 (1971); *see also Tennessee Asphalt Co. v. Purcell Enter.*, 631 S.W.2d 439, 442 (Tenn. Ct. App. 1982).

> As the thirteenth juror, the trial judge is required to approve or disapprove the verdict, to independently weigh the evidence, and to determine whether the evidence preponderates in favor of or against the jury verdict. *Mize*, 63 Tenn. App. at 42, 468 S.W.2d at 736. If the trial judge is dissatisfied with the verdict, he should set it aside and grant a new trial. *Hatcher v. Dickman*, 700 S.W.2d 898, 899 (Tenn. Ct. App. 1985) (quoting *Cumberland Tel. & Tel. Co. v. Smithwick*, 112 Tenn. 463, 469, 79 S.W. 803, 804 (1904)).

*Loeffler v. Kjellgren*, 884 S.W.2d 463, 468-69 (Tenn. Ct. App. 1994).

## IV. DISCUSSION

A panel of this court noted in *Watson v. Payne*, 359 S.W.3d 166 (Tenn. Ct. App. 2011) as follows:

> It is well-settled that a plaintiff in a negligence action must prove the essential elements of duty, breach of duty, causation in fact, proximate causation, and damages. *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). The existence of a duty is a question of law, but the elements of causation in fact and proximate cause are matters to be resolved by the trier of fact. *Hale v. Ostrow*, 166 S.W.3d 713, 716-19 (Tenn. 2005). Likewise, the determination of damages in a personal injury case is within the province of the finder of fact. *Grandstaff v. Hawks*, 36 S.W.3d 482, 499 (Tenn. Ct. App. 2000).

*Watson*, 359 S.W.3d at 168. "The law requires a plaintiff seeking to recover damages from a personal injury to present competent expert testimony (1) to prove medical expenses were

necessary and reasonable and (2) to establish that a plaintiff's physical injury was in fact caused by the incident at issues." *Al-Athari v. Gamboa*, No. M2013-00795-COA-R3-CV, 2013 WL 6908937, at *3 (Tenn. Ct. App. Dec. 30, 2013). Ms. Casey and Mr. Smith submit that there was material evidence to support the jury's verdict that the collision did not cause Mr. Kempson medical complaints. While the Kempsons have argued that the testimony of Dr. Hodges that the accident caused Mr. Kempson's medical condition to worsen was uncontradicted, Ms. Casey and Mr. Smith assert that there was sufficient testimony from Dr. Hodges and Dr. Gruber, obtained during cross examination, to support the jury's ultimate conclusion that Mr. Kempson was not injured in the accident.

Dr. Hodges' video-taped deposition revealed that Mr. Kempson had been his patient since 1998, when he underwent microdiscectomy surgery on the discs between L4-L5 and LS-Sl. Mr. Kempson returned to Dr. Hodges in 2004 with complaints of back pain with bilateral leg pain. He returned again in 2010 reporting pins and needles/burning in his left arm and a stabbing pain in his upper back. An MRI at that time showed herniated discs at three different levels. An x-ray of Mr. Kempson's cervical spine, taken by Dr. Hodges, showed degenerative changes. Dr. Hodges acknowledged that degenerative changes were present throughout Mr. Kempson's spine prior to the 2011 accident.

After the accident in 2011, Mr. Kempson returned to Dr. Hodges with complaints of neck and left arm pain -- the same complaints as 2010. On an office visit in January 2012, after the accident, Mr. Kempson again complained of neck and arm pain. However, when he returned to the office in April 2012, Mr. Kempson's complaints were of low back pain and pain in his legs with no mention of neck or arm pain. In fact, Mr. Kempson noted zero pain in those areas. When Mr. Kempson returned in May 2012, his complaints were about his low back. Reports of neck and arm pain arose again in July 2012.

Regarding Mr. Kempson's post-surgery complaints of pain, Dr. Hodges testified on cross-examination that Mr. Kempson had a CT that showed no abnormal findings and did not provide an explanation for Mr. Kempson's post-surgery pain complaints. Dr. Hodges sent Mr. Kempson for an EMG study to look for a nerve injury. The EMG study showed mild ulnar neuropathy, which Dr. Hodges testified usually does not have a traumatic etiology. Dr. Hodges ultimately admitted that he did not know the cause of Mr. Kempson's post-surgery pain complaints.

Dr. Gruber, a chiropractor, began treating Mr. Kempson in 2001 related to back pain. A 2006 automobile accident brought Mr. Kempson into Dr. Gruber's office for treatment of lower and upper back pain and neck pain. On July 28, 2006, Mr. Kempson reported neck pain with increased pain in the cervicals and muscle spasm with limited range of motion. On cross examination, Dr. Gruber admitted that Mr. Kempson's treatment as far back as 2003 and in 2004 and 2005 involved his neck or cervical spine. Mr. Kempson continued care with Dr. Gruber after his 2006 motor vehicle accident. As to the July 28, 2006, treatment, Mr.

Kempson reported that his neck pain was sharp and a 3 on a pain scale of 1-4. Dr. Gruber diagnosed Mr. Kempson with cervical subluxation and cervicalgia (i.e., neck pain). According to Dr. Gruber, he continued to provide care and treatment to Mr. Kempson for his cervical spine through from 2006 through 2010.

After the 2011 motor vehicle accident at issue, Mr. Kempson rated his pain a 7 on a scale of 1-10. Most importantly, Dr. Gruber assessed Mr. Kempson with the same cervical diagnosis that he had after the 2006 motor vehicle accident. Dr. Gruber noted that the "difference . . . between those previous incidences is they were all resolved either at that time or shortly thereafter. The only time that it was never resolved was after the accident of 2011." Interestingly, Dr. Gruber recalled that Mr. Kempson had the surgery "against my recommendation."

Ms. Casey and Mr. Smith contend that based on the above testimony from Mr. Kempson's treating surgeon and chiropractor, combined with the photographs of the vehicles in their post-accident condition and the testimony of the parties, there was sufficient evidence in the record to support the jury's conclusion that Mr. Kempson had not been injured as a result of the 2011 motor vehicle accident. They assert that the evidence obtained from both medical providers on cross examination was that Mr. Kempson had experienced the very same complaints for years prior to the 2011 accident. Ms. Casey and Mr. Smith argue that it was reasonable for the jury to conclude that Mr. Kempson's complaints were solely related to his pre-accident condition and unrelated to the accident.

In its role as fact-finder, it is the duty and prerogative of the jury to assess the credibility of the witnesses. The jury is at liberty to either believe or disbelieve the subjective complaints of a plaintiff as to injuries, as well as testimony as to how the accident occurred. *See Gibson v. Francis*, No. E2003-02226-COAR3-CV, 2004 WL 1488541, at *4 (Tenn. Ct. App. June 30, 2004). The trier of fact is not bound to accept an expert witness's testimony as true, and it may reject any expert testimony that it finds to be inconsistent with the credited evidence or that is otherwise unreasonable. *Roach v. Dixie Gas Co.,* 371 S.W.3d 127, 150 (Tenn. Ct. App. 2011), citing *Dickey v. McCord*, 63 S.W.3d 714, 720-21 (Tenn. Ct. App. 2001). The jury can give more credence to cross-examination testimony than the testimony provided on direct. In this case, the jury had the liberty to consider the testimony of Mr. Kempson as to his alleged injuries, how the accident happened, and to completely reject his version of his injuries and the accident. This is especially true in light of the testimony obtained from Mr. Kempson's treating medical providers on cross-examination, Mr. Kempson's testimony, the photographs of the vehicles, and the testimony from Ms. Casey. The verdict shows that the jury obviously gave credence to evidence indicating that Mr. Kempson's pain and suffering was not caused by the accident at issue.

Ms. Casey and Mr. Smith urge us to follow *Edwards v. McPeake*, No. M2004-00747-COA-R3-CV, 2005 WL 954864 (Tenn. Ct. App. Apr. 25, 2005), in which we set forth:

From our review of the evidence, we conclude there is material evidence to uphold the jury's verdict. The evidence establishes that the impact between the vehicles was very slight, causing little damage. The investigating officer stated there were no complaints of any injuries when he investigated the accident, and the defendant driver testified that the plaintiff told defendant that plaintiff was not injured immediately following the accident. Plaintiff relies heavily on the testimony of plaintiff's treating physician. However, the treating physician conceded that his opinions of injury and disability were based upon plaintiff's subjective complaints of pain. This physician also testified to plaintiff's injuries from a prior accident in 1999 where he suffered a herniated disc at the cervical level of the spine requiring surgery, and the doctor had treated plaintiff for low back pain and right leg pain in 2001 prior to this accident. The doctor also testified that plaintiff had suffered from degenerative disc disease for years and on cross-examination conceded that the plaintiff would ultimately have arrived at his then existing medical condition at some future time, with or without the occurrence of the accident.

*Edwards v. McPeake*, No. M2004-00747-COA-R3-CV, 2005 WL 954864, at *1 (Tenn. Ct. App. Apr. 25, 2005). The cases are similar. Mr. Kempson has a very long history of spinal complaints. Ms. Casey and Mr. Smith successfully obtained testimony from the medical providers on cross-examination as to Mr. Kempson's pre-existing complaints and how they were the same as his post-accident complaints. It was reasonable for the jury to reject Mr. Kempson's testimony as to the nature of the impact based on Ms. Casey's testimony and the photographs of the damage. The difference is that Dr. Hodges, the expert in the instant case, testified that the collision, however minor, aggravated Mr. Kempson's physical infirmities. According to Dr. Hodges, but for the accident, Mr. Kempson would not have experienced the difficulties that ultimately required surgery. Ms. Casey and Mr. Smith offered no proof to refute Dr. Hodges's expert medical opinion. It is well settled in this state that a jury is not justified in ignoring the "unimpeached, uncontradicted testimony of a physician in respect to scientific information of which a layman would not be expected to have any reliable knowledge." *Reserve Life Ins. Co. v. Whittemore*, 442 S.W.2d 266, 275 (Tenn. Ct. App. 1969). Aggravation of a preexisting condition is a compensable element of damages. *See Elrod v. Town of Franklin*, 204 S.W.298, 301-02 (Tenn. 1918). It is a well-established principle that "a defendant takes a plaintiff as he finds him. The fact that a party is in a weakened condition at the time of the injury is not a causal defense available to the defendant." *Fuller v. Speight*, 571 S.W.2d 840, 841 (Tenn. Ct. App. 1978).

In addition, when reasonableness and necessity are demonstrated by unrefuted expert proof,

> "[g]enerally, a plaintiff in a negligence action is entitled to recover reasonable expenses for medical examinations to determine if the plaintiff sustained injuries, even where it is determined that the plaintiff sustained no injury." *Newsom v. Markus*, 588 S.W.2d 883, 887 (Tenn. Ct. App. 1979). Recovery may be denied, however, for expenses that the jury determines were unreasonable or unnecessary. *Brown v. Chesor*, 6 S.W.3d 479, 484 (Tenn. Ct. App. 1999)."

*Watson*, 359 S.W.3d at 170. The evidence supports an award of damages in an amount minimally equal to the reasonable and necessary medical expenses incurred to evaluate for injuries following the collision.

## V. CONCLUSION

There is no material evidence to support the jury's award of no damages because it fails to consider the aggravation of a preexisting condition and it fails to compensate for expenses which are unrefuted by the proof. We therefore vacate the trial court's judgment on the jury's verdict and remand this matter for a new trial on damages. Costs are assessed to the appellees, Pamela Casey and Bradley H. Smith.

_____
JOHN W. MCCLARTY, JUDGE