IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2019 Session

**HELEN M. BELL v. D. BRECK ROBERTS II**

**Appeal from the Circuit Court for Williamson County**
**No. 2016-567      James G. Martin III, Judge**

_____

**No. M2018-02126-COA-R3-CV**

_____

The plaintiff filed this personal injury action seeking compensation for injuries allegedly sustained in an automobile accident. The jury found in favor of the defendant and awarded zero damages. On appeal, the plaintiff argues that the jury verdict was inadequate and the special verdict form was misleading. We conclude that there is material evidence in the record to support the jury award. And we deem the plaintiff's second issue waived. So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

H. Douglas Nichol, Knoxville, Tennessee, for the appellant, Helen M. Bell.

John W. Rodgers and Jason N. King, Murfreesboro, Tennessee, for the appellee, D. Breck Roberts II.

**OPINION**

**I.**

In November 2015, Mrs. Helen M. Bell, a 70-year-old widow, was involved in an automobile accident. At that time, Mrs. Bell was the full-time caretaker for an adult male who had suffered a debilitating stroke. She was driving to Williamson County Medical Center to resume her duties as a caregiver when the accident occurred. According to Mrs. Bell's trial testimony, she was stopped at an intersection when she felt "a hard jolt"

from the vehicle behind her. Mr. D. Breck Roberts, the driver of the following vehicle, admitted that his negligence caused the accident.

The police officer who investigated the accident reported no injuries and only minor vehicle damage. No one requested an ambulance. But Mrs. Bell was evaluated at Williamson County Medical Center later that day. The scans of her spine showed changes consistent with degenerative disc disease. She was released with prescriptions for pain medication and muscle relaxants and told to wear a soft cervical collar as needed.

Fifteen days later, Mrs. Bell went to see her treating physician, Dr. Mary McBean. Dr. McBean recommended additional pain relief measures and physical therapy. The physician continued to treat Mrs. Bell for neck pain for the next several months. On April 29, 2016, Dr. McBean noted in her records that Mrs. Bell had made a full recovery.

Mrs. Bell sued Mr. Roberts for negligence. Mr. Roberts admitted fault, but denied responsibility for Mrs. Bell's alleged injuries. The trial focused on causation and damages. The jury heard testimony from Mrs. Bell, Mr. Roberts, Dr. McBean, and the police officer who investigated the accident. They also viewed post-accident photographs of the two vehicles.

Mrs. Bell acknowledged her history of degenerative disc disease and back surgery. But, despite her medical condition, Mrs. Bell maintained at trial that she never experienced neck pain before the accident. Her previous back surgery had been a complete success. She had no physical limitations and was able to perform her duties as a full-time caregiver with ease.

According to Mrs. Bell, everything changed after the accident. The impact caused her head to go "forward and then backwards." She experienced immediate pain, which she described to the investigating officer. But she refused an ambulance because she felt able to drive.

When she arrived at Williamson County Medical Center, she went to the emergency department for evaluation. After reviewing scans of her spine, the hospital provider gave her various prescriptions for pain relief. She chose not to take the narcotic pain medications as they could limit her ability to perform her duties as a caregiver. Because she was still in pain, she went to see Dr. McBean. She tried the prescribed physical therapy for a few sessions, but it was not helpful. And the other non-narcotic pain relief measures suggested by Dr. McBean provided only limited benefit. Mrs. Bell claimed she had been in almost constant pain since the accident. At the time of trial, she was still wearing daily pain patches.

Mrs. Bell's testimony about her physical condition both before and after the accident was drawn into question during cross-examination. Opposing counsel pointed

out that her story about any history of neck pain had changed since her deposition. Mrs. Bell was also forced to admit that she had sought treatment for recurring back pain in both 2011 and 2013. She denied that she had fully recovered from her injuries in April 2016, insisting that her physician's notes had been misinterpreted. But she admitted that she never complained about neck pain to Dr. McBean after her April 2016 visit.

Mrs. Bell conceded that she did not sustain any bumps, cuts, or bruises in the accident. Her body did not strike the interior of the vehicle. And she could not recall if her vehicle was pushed forward upon impact. She also agreed that the damage to her car was superficial. She never bothered to have it repaired.

The jury also viewed the video deposition of Dr. McBean. When Dr. McBean saw Mrs. Bell fifteen days after the accident, she complained that she had been suffering from headaches and both neck and back pain since the accident. Dr. McBean reviewed the medical records from Williamson County Medical Center and performed a physical examination. In her expert medical opinion, the impact from the accident had aggravated Mrs. Bell's pre-existing condition.

Dr. McBean agreed that she based her opinion on purely subjective findings, namely the patient history and physical examination. She could not identify any objective evidence to support her opinion. Mrs. Bell had no cuts or bruises. The hospital scans, for the most part, showed only degenerative changes consistent with aging and normal wear and tear. And Dr. McBean could not definitively say that the most notable finding—a change in Mrs. Bell's neck curve—was a result of the accident.

Dr. McBean admitted that she had only limited information about Mrs. Bell's accident. She did not question Mrs. Bell's story or explore other potential causes of her symptoms. She emphasized the close temporal relationship between Mrs. Bell's initial pain complaints and the accident. But Dr. McBean agreed that degenerative disc disease could cause neck pain.

After reviewing Mrs. Bell's medical bills from Williamson County Medical Center and the physical therapy group, Dr. McBean opined that the charges were reasonable and necessary. And she identified the charges from her office that were directly attributable to the accident. In her opinion, the charges from her office that were attributable to the accident were also reasonable and necessary.

For his part, Mr. Roberts described the accident as minor. He conceded that he failed to stop. But the two vehicles merely "touched." His airbags did not deploy. He was not injured. And his vehicle sustained no damage. The investigating officer echoed the findings in his police report. No injuries were reported at the scene. And the property damage was insignificant.

The jury returned a verdict in favor of Mr. Roberts and awarded zero damages. Mrs. Bell filed a motion for a new trial, arguing that the jury's verdict was not supported by material evidence and the verdict form was misleading. Satisfied with the jury verdict, the trial court denied the motion for a new trial. Mrs. Bell raises the same two issues again here on appeal.

## II.

Where, as here, the trial court has approved an allegedly inadequate jury award, "our review is limited to a determination of whether material evidence can be found in the record that would support [the award] as being at or above the lower limit of the range of reasonableness." *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980). We take the strongest legitimate view of the evidence supporting the verdict, including all reasonable inferences, assume the truth of the supporting evidence, and discard all countervailing evidence. *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978). "The material evidence analysis is very deferential." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422-23 (Tenn. 2013). If there is any material evidence to support the verdict, we must affirm. *Crabtree Masonry Co.*, 575 S.W.2d at 5.

Mrs. Bell had the burden of proving that Mr. Roberts's negligence was the cause in fact of her injuries. *See Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 181 (Tenn. 1992) ("Proof of negligence without proof of causation is nothing."). "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). Causation in a personal injury action must ordinarily "be established by testimony from a medical expert." *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897, 901 (Tenn. Ct. App. 2001). Proof that the accident aggravated the victim's pre-existing condition is enough. *See Elrod v. Town of Franklin*, 204 S.W. 298, 301 (Tenn. 1918) ("The defendant is responsible for all ill effects which naturally and necessarily follow the injury in the condition of health in which the plaintiff was at the time of the fall, and it is no defense that the injury might have been aggravated and rendered more difficult to cure by reason of plaintiff's state of health at that time, or that by reason of latent disease the injuries were rendered more serious to her than they would have been to a person in robust health.").

Mrs. Bell contends that she met her burden of proof with the testimony of Dr. McBean. And the jury was not entitled to ignore "the unimpeached, uncontradicted testimony" of her medical expert. *See Reserve Life Ins. Co. v. Whittemore*, 442 S.W.2d 266, 275 (Tenn. Ct. App. 1969). But Dr. McBean's causation opinion was based on "purely subjective findings" gleaned from Mrs. Bell. *See Baxter v. Vandenheovel*, 686 S.W.2d 908, 912 (Tenn. Ct. App. 1984). Under these circumstances, the jury was free to disregard the unrefuted medical proof. *See Brown v. Chesor*, 6 S.W.3d 479, 483 (Tenn. Ct. App. 1999) (holding that the jury was not bound to accept medical testimony based

4

on the plaintiffs' statements "as to when their complaints and pain commenced and ceased"); *Baxter*, 686 S.W.2d at 912 (explaining that the jury must be allowed to make its own assessment of the patient's credibility).

The jury found that Mrs. Bell did not prove that the accident caused her injuries. We conclude that there is material evidence in this record to support that finding. Proof at trial indicated the accident involved a minor impact. Mr. Roberts stated the vehicles merely "touched." Neither vehicle had to be repaired. No air bags deployed. The investigating officer maintained that Mrs. Bell denied injury at the scene. While Mrs. Bell testified to the contrary, her credibility was successfully challenged. Mrs. Bell admitted she had a history of degenerative disc disease. And Dr. McBean agreed that her medical condition could cause neck pain.

Even so, Mrs. Bell contends that she was entitled, at the very least, to recover the cost of her evaluation at Williamson County Medical Center. Our courts have held that a personal injury plaintiff "is entitled to recover reasonable expenses for medical examinations to determine if the plaintiff sustained injuries, even where it is determined that the plaintiff sustained no [physical] injury." *Watson v. Payne*, 359 S.W.3d 166, 170 (Tenn. Ct. App. 2011); *Newsom v. Markus*, 588 S.W.2d 883, 887 (Tenn. Ct. App. 1979). But recovery is not automatic. *See Hughes v. Hudgins*, No. E2008-01385-COA-R3-CV, 2009 WL 2502001, at *7 (Tenn. Ct. App. Aug. 17, 2009) (declining to intrude upon the province of the jury and impose a bright line rule). The plaintiff must still convince the jury that the claimed medical expenses were both necessary and reasonable. *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009) ("An injured plaintiff bears the burden of proving that medical expenses the plaintiff is seeking to recover are necessary and reasonable."); *Watson*, 359 S.W.3d at 170 ("Recovery may be denied, however, for expenses that the jury determines were unreasonable or unnecessary.").

Dr. McBean opined that Williamson County Medical Center's charges were reasonable and necessary. As noted above, Dr. McBean's opinion was based on her assessment of Mrs. Bell's credibility. *See Baxter*, 686 S.W.2d at 912. Having rejected Mrs. Bell's testimony, the jury could have reasonably concluded that the evaluation was unnecessary given the minor nature of the accident. The jury "may reject any expert testimony that it finds to be inconsistent with the credited evidence or is otherwise unreasonable." *See Roach v. Dixie Gas Co.*, 371 S.W.3d 127, 150 (Tenn. Ct. App. 2011). *But see Reserve Life Ins. Co.*, 442 S.W.2d at 275 ("Neither the jury nor this Court is justified in ignoring the unimpeached, uncontradicted testimony of a physician in respect to scientific information of which a layman would not be expected to have any reliable knowledge.").

But Mrs. Bell has one final argument. She argues that the jury did not award her medical evaluation expenses because it was misled by the special verdict form. Trial courts have wide latitude in the use of special verdict forms. *Concrete Spaces, Inc. v.*

*Sender*, 2 S.W.3d 901, 910 (Tenn. 1999). Special verdict forms should parallel the issues covered by the jury charge. *Ingram v. Earthman*, 993 S.W.2d 611, 640 (Tenn. Ct. App. 1998). They should not be confusing or inconsistent with the trial court's instructions. *Id.* at 641. We review the jury instructions and the special verdict form together "to determine whether they present the contested issues to the jury in an unclouded and fair manner." *Id.* at 640. We will order a new trial "when verdict forms are composed in such a faulty fashion that they do not address each of the plaintiffs' theories of recovery and do not allow the jury to adequately respond to each claim." *Concrete Spaces, Inc.*, 2 S.W.3d at 911.

The verdict form provided:

1. Do you find the plaintiff, Helen M. Bell, sustained any injury caused by the November 5, 2015 car crash?

   Yes ____      No ____

   If your answer is "no" stop here, sign the verdict form and return to the court courtroom.

2. What amount of damages do you find were sustained by plaintiff as a result of the November 5, 2015 car crash?

   | | | |
   |---|---|---|
   | A.) Medical expenses | Past | $_____ |
   | B.) Physical and Emotional Pain and Suffering | Past | $_____ |
   | | Future | $_____ |
   | | | $_____ |
   | C.) Permanent Injury | | $_____ |
   | D.) Loss of enjoyment of life and lifestyle | Past | $_____ |
   | | Future | $_____ |
   | | Total: | $_____ |

Mrs. Bell's argument hinges on the meaning of "injury" in the first question. She views the verdict form as limiting the jury to awarding compensatory damages only if they first found that she suffered physical injury as a result of the accident. But the term "injury" can be read more broadly to include any harm or damage for which the law provides a remedy. *See Injury*, BLACK'S LAW DICTIONARY (11th ed. 2019). And the

6

jury was instructed that if it found that the plaintiff was entitled to damages, it was to award reasonable compensation for all proven losses or harms provided it also found the loss or harm was caused by the defendant. *See Newsom*, 588 S.W.2d at 887 (explaining that the plaintiff's medical expenses for evaluation after the accident "flowed naturally from the tortious act of the defendant" even in the absence of physical injury).

The first question on the verdict form may have been inartfully drafted. And the jury possibly interpreted "injury" to mean only physical injury. But the parties were aware of the contents of the special verdict form before it was given to the jury. Plaintiff's counsel, in closing argument, referenced the two questions before the jury and suggested answers based on his view of the evidence presented. We find no indication that plaintiff's counsel voiced any objections to the verdict form until the motion for new trial. "Failure to make a timely objection to a verdict form constitutes a waiver of the objection." *Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 759 (Tenn. Ct. App. 1989) (cited with approval in *Creech v. Addington*, 281 S.W.3d 363, 386 (Tenn. 2009)); *see also Keeling v. Coffee Cty.*, No. M2017-01809-COA-R3-CV, 2018 WL 4468401, at *13-15 (Tenn. Ct. App. Sept. 18, 2018). We deem this issue waived.

When we take the strongest legitimate view of the evidence supporting the verdict and discard all countervailing evidence, we conclude there was material evidence to support the jury verdict. *See Crabtree Masonry Co.*, 575 S.W.2d at 5. The jury could have reasonably concluded that Mrs. Bell failed to meet her burden of proving that the accident caused her injuries and that her medical evaluation expenses were reasonable and necessary.

## III.

Because there is material evidence to support the jury verdict and Mrs. Bell waived any objection to the special verdict form, we affirm. This case is remanded for further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE