IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2007 Session

## ROBERT A. WARD and wife, SALLY WARD, v. CITY OF LEBANON, TENNESSEE; CITY OF LEBANON GAS DEPARTMENT; JAMES N. BUSH CONSTRUCTION, INC.; FOSTER ENGINEERING & ENERGY, INC.; and WATER MANAGEMENT SERVICES, LLC.

**Direct Appeal from the Circuit Court for Wilson County**
**No. 13300     Hon. John D. Wootten, Jr., Circuit Judge**

---

**No. M2006-02520-COA-R3-CV - Filed April 25, 2008**

---

Plaintiff, while excavating, struck a gas line which resulted in an explosion and fire, seriously injuring plaintiff. Plaintiffs brought this action against several defendants and the case went to trial against the City of Lebanon and Bush Construction Company, Inc. A jury returned a verdict for the plaintiffs and allocated percentages of fault as to both defendants and the plaintiff. The Trial Court entered Judgment in favor of the plaintiffs and defendants appealed. We reverse the Trial Court Judgment and remand for a new trial on the grounds that a part of the charge to the jury was erroneous.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded for a new trial.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which ANDY BENNETT, J., and JON KERRY BLACKWOOD, SR. J., joined.

Robyn Beale Williams, Nashville, Tennessee, for appellant, City of Lebanon.
James C. Wright and Edward U. Babb, Knoxville, Tennessee, for appellant, James N. Bush Construction, Inc.

Jack O. Bellar and Jamie D. Winkler, Carthage, Tennessee, for appellees, Robert A. Ward and Sally Ward.

Robert H. Watson, Jr., and Hanson R. Tipton, Knoxville, Tennessee, for *Amicus Curiae* Tennessee Municipal League Risk Management Pool.
C. Dewey Branstetter, Jr., Nashville, Tennessee for *Amicus Curiae* Tennessee One Call System, Inc.

# OPINION

Plaintiffs, Robert and Sally Ward, brought this action against the City of Lebanon, City of Lebanon Gas Department, Bush Construction, Inc., and Water Management, Inc., and alleged that on June 12, 2003, Ward was operating a track hoe in the course of his employment on Main Street near Bay Court in Lebanon. Plaintiffs alleged that his employer had been contracted to install subterranean water lines under Main Street, and that Bush had contracted to install subterranean natural gas lines.

Plaintiffs alleged that in April 2003, his employer had dug a trench at the same location, and Bush, the City and the Gas Department had disconnected and cut a section of the gas line, and capped it at both ends, and that the trench was then filled. Further, that the gas line was later repair/replaced, without the knowledge of plaintiff or his employer. Further, that on June 12, 2003, he returned to the site and began digging a trench to install the water lines, when he struck the gas line, which resulted in an explosion and fire, causing him serious personal injuries.

Plaintiffs allege that defendants were reckless in replacing the gas line and failing to warn him or others that the gas line was in service, in failing to place markings or designations noting the presence of the gas line. Further, that defendants had violated the Pipeline Safety Improvement Act, 49 U.S.C. §60101 *et seq*, and the Underground Utility Damage Prevention Law, Tenn. Code Ann. §65-31-101 *et seq*.

After the remaining defendants were either non-suited or dismissed, the case went to trial as to the City of Lebanon and Bush Construction Company. After the trial, the Trial Judge entered an Order and Judgment stating that the jury had returned a unanimous verdict in favor of plaintiffs and had found the City of Lebanon and James N. Bush Construction Company were negligent, and that the jury attributed 30% of the fault for the accident to Ward, 40% to the City and 30% to Bush. The Court found that the jury awarded damages of $750,000.00 to Mr. Ward and $30,000.00 to Ms. Ward, plus the Court ordered Bush to pay $234,000.00 and ordered the City to pay $250,000.00 pursuant to the statutory limits.

The City filed a Motion to Set Aside the Verdict and to have Judgment Entered Notwithstanding the Verdict, or Alternatively for a New Trial, alleging that the Court failed to direct a verdict for the City; in charging the jury with language from *South Central Bell v. Jones Bros. Contractors, Inc.*, and in reading only a portion of the language after the jury returned with a question; in allowing the testimony of Leighton Sissom to be introduced at trial; and other grounds. Bush also filed a Motion to Have the Jury Verdict Set Aside, or Alternatively for New Trial, and *inter alia* argued that the Court erred in charging the jury with language from the *South Central Bell* case, and allowing Sissom to testify. The Trial Court denied the Motions and affirmed the previous judgment. This appeal ensued.

Numerous issues were raised on appeal, as follows:

-2-

1. Whether the Trial Court erred in failing to direct the verdict in favor of the City of Lebanon on all claims?

2. Whether the Trial Court erred in charging the jury with language from *South Central Bell v. Jones Bros. Contractors, Inc.*, and in reading only a portion of the language after the jury returned with a question?

3. Whether the Trial Court erred in allowing the testimony of Leighton Sissom, M.E. to be introduced at trial?

4. Whether the Trial Court erred in failing to charge the jury using language from *South Central Bell v. Jones Bros. Contractors, Inc.*?

5. Whether the Trial Court erred in denying the City's post-judgment motion?

6. Whether the Trial Court erred in awarding discretionary costs to plaintiffs?

7. Whether Bush had a legal duty to warn Ward of re-connection of an underground gas line since Ward failed to comply with the notice requirements of the Tennessee Underground Utility Damage Prevention Act (Tenn. Code Ann. §65-31-101 et seq.), also known as the one-call statute?

8. Whether the Trial Court erred in instructing the jury regarding Ward's duties under the one-call statute?

9. Whether Ward's violation of the one-call statute and his own negligence in igniting the natural gas were the proximate cause of his injuries as a matter of law?

10. Whether Ward's violation of the one-call statute and his own negligence in igniting the natural gas made him at least fifty percent at fault for his injuries?

Some of the issues raised on appeal overlap, and will be addressed in concert, as appropriate.

Both defendants argue that the Wards' claims were largely centered around defendants' failure to tell Ward that the subject gas line had been re-connected, when they knew that he would be doing further work at the site. This issue is interwoven with the provisions of the UUDPA and the question of whether Ward violated the Act.

The Underground Utility Damage Prevention Act (also known as the Tennessee One-Call statute), codified at Tenn. Code Ann. §65-31-101 *et seq.*, states that "no person may excavate

-3-

in a street, highway, public space, a private easement of an operator or within one hundred feet (100')
of the edge of the pavement of a street or highway, or demolish a building, without giving the notice
required by §65-31-106 in the manner provided by such section." Tenn. Code Ann. §65-31-106
states that before beginning any excavation, a person shall serve written or telephonic notice of intent
to excavate at least three working days prior to the actual date of excavation, and that if 15 calendar
days expire and the excavation is not complete, then the person shall serve an additional notice at
least three working days prior to the expiration of time on the fifteenth day.

There is no dispute in this case that Ward did not comply with the provisions of the
One-Call statute.

Plaintiffs counter that the case of *South Central Bell Telephone Co. v. Jones Bros.
Contractors, Inc.*, 805 S.W.2d 749 (Tenn. 1991), holds that the provisions of the UUDPA do not
apply to an excavator who has prior knowledge of the location of underground utilities in the area
to be excavated. The Trial Court agreed, and charged the jury as follows:

> Before beginning any excavation operation, each person responsible for such
> excavation shall serve written or telephonic notice of intent to excavate at least 3
> working days prior to the actual date of excavation but not more than 10 full working
> days prior to such time, unless a different period has been agreed to, or in writing, by
> the person responsible for the excavation and the operation or designated
> representative.
>
> Such a period of time of 15 calendar days from the actual date specified to start
> excavation expire without the excavation or demolition being completed, then the
> person responsible for such excavation shall serve an additional written or telephonic
> notice of intent to excavate or demolish at least 3 working days prior to the expiration
> of time on the 15th calendar day.
>
> * * *
>
> The Underground Utility Damage Prevention Act was intended for situations in
> which a contractor or excavator proposed to excavate in an area where he had no
> prior knowledge of the location of underground utilities that would be affected by
> the proposed excavation.
>
> As I instructed you just a moment ago, the Underground Utility Damage Prevention
> Act and Tennessee law was intended for situations in which a contractor or excavator
> proposed to excavate in an area where he had no prior knowledge of the location of
> underground utilities that would be affected by the proposed excavation.
>
> However, I just mentioned there's a provision under Tennessee law that if a project
> excavation is not completed within 15 calendar days of the actual date specified to

start excavation, then the person responsible for the excavation shall serve additional notice of intent to excavate at least 3 days prior to the expirations of the 15th calendar day.

As part of your determination of fault, you must determine from the facts of this case whether or not Mr. Ward was required to give additional notice or not since he allegedly had prior knowledge of the location of the natural gas line and what, if any, fault you may assign to him.

The Trial Court based a portion of its instruction on the holding in *South Central Bell*, regarding plaintiff's alleged prior knowledge of the location of the gas line. Defendants and *amicus curiae* argue that the holding in *South Central Bell* which the Trial Court relied upon, however, has been called into question by later amendments to UUDPA.

The UUDPA was amended in 1993, and the requirements of Tenn. Code Ann. §65-31-104 were significantly modified. At the time the *South Central Bell* case was decided, Tenn. Code Ann. §65-31-104 stated that no one could excavate without first ascertaining the location of all underground utilities that would be affected by the excavation. After the 1993 amendments, however, Tenn. Code Ann. §65-31-104 now requires that anyone who wants to excavate must first give notice in accordance with Tenn. Code Ann. §65-31-106, which requires written, telephonic, or email notice to the One-Call system. I.e., the statute requires notice to the One-Call system rather than simply "ascertainment" of the location of the utilities.

In *South Central Bell*, the Supreme Court examined the language of the UUDPA and interpreted it to mean that it was "intended for situations in which a contractor or excavator proposed to excavate in an area where he had no prior knowledge of the location of underground utilities that would be affected by the proposed excavation." *Id.* at 751. Thus, the Supreme Court held that since the project was an ongoing highway relocation project that had been underway for two years, and since both parties knew where the utilities were supposed to be, the plaintiff was guilty of contributory negligence for failing to comply with the planned location of the phone lines, and the defendant was not liable for severing the same. The language of the statute at that time simply required an excavator to "ascertain" the location of any underground utilities in the area of the proposed excavation. Under the prior provision, where an excavator had such knowledge, the requirements of the statute were met.

When the statute was amended in 1993 (after the *South Central Bell* decision), the language of the provision was changed to require notice to the One-Call system, rather than merely ascertainment of the location of the underground utilities. The mandate in the amended statute now commands contact with One-Call within a specific time frame (which results in notice to and marking by the utility provider). The statute's language is explicit and unambiguous,[1] and eroded

---

[1] As Bush has pointed out, however, the legislative history pertaining to the amendments makes clear that the amendments were enacted to deal with the "problem" created by the *South*

the precedential value of the *South Central Bell* decision as it applies to this case.

Since the applicable statute requires notice to the One-Call system, which was clearly not given in this case, the trial court erred in instructing the jury regarding the holding in *South Central Bell*, and in asking the jury to determine what type of notice was required. The trial court decides the questions of law, and the law clearly imposes a duty upon excavators to give notice to One-Call, which was not done. As a result, the jury instructions were confusing and misleading to the jury, and did not accurately reflect the law.

While Ward's conduct in failing to comply with the One-Call statute amounts to negligence *per se*,[2] the question of whether defendants could also have been found to be negligent, and whether such negligence was the cause of Ward's injuries, remains. To bring a successful negligence claim, a plaintiff must establish each of the following elements: a duty of care owed by the defendants to the plaintiff; conduct by the defendants falling below the applicable standard of care that amounts to a breach of that duty; an injury or loss; causation in fact; and proximate, or legal, causation. *See Staples v. CBL & Associates*, 15 S.W.3d 83, 89 (Tenn. 2000).

What duty is owed to the plaintiff by the defendants is a question of law to be determined by the court. *Id.* As the Supreme Court has explained:

> Duty is the legal obligation a defendant owes to a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm. In assessing whether a duty is owed in a particular case, courts must apply a balancing approach, based upon principles of fairness, to identify whether the risk to the plaintiff was unreasonable. This Court has stated that a "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." The court must consider several factors in determining whether a risk is an unreasonable one, including:
>
> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance of social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Central Bell* decision.

[2]It is for the trier of fact to determine whether the statutory violation is the proximate cause of the injury. *See, Davidson v. Power Board of City of Pulaski,* 686 S.W.2d 581 (Tenn. Ct. App. 1984).

*Staples v. CBL & Associates*, 15 S.W.3d 83, 89 (Tenn. 2000)(citations omitted).

Defendants argue that they could not have been negligent because they owed no duty to warn Ward of the reconnection of the gas line, apart from their duty to mark its location if Ward had complied with the UUDPA. Clearly, Ward was guilty of negligence in not making the UUDPA call. A jury could find that Ward's negligence was the proximate cause of his injuries. The pleadings and the circumstances of the incident, however, raise issues of the defendant's negligence as well. The record shows that all the parties knew that Ward had to return for further excavations and that the gas line had been reconnected. The UUDPA does not indicate that an excavator's failure to make the notifying call absolves the utility in all circumstances from negligence or from any common law duty to act reasonably to prevent harm.

As stated above, a "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* In this case, the foreseeable probability and gravity of harm to plaintiff posed by defendants' re-connection of the subject gas line, with the knowledge that plaintiff would be excavating in the area, outweigh the burden upon defendant to warn plaintiff that the gas line had been re-connected.

Defendants also argue that the re-connection of the gas line was not the cause of Ward's injuries, and that Ward's own negligence made him at least 50% at fault for his injuries. The general rule is that what is the proximate cause of an injury is a question for the jury, especially when the evidence is controverted. *Helderman v. Smolin*, 179 S.W.3d 493 (Tenn. Ct. App. 2005). It is also within the province of the jury to apportion fault between the parties. *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994).

The City argues that it should have been granted a directed verdict based on the Government Tort Liability Act, and relies on the case of *Johnson v. EMPE, Inc.*, 837 S.W.2d 62 (Tenn. Ct. App. 1992), which held that a dangerous or defective condition on a public street, for which immunity is removed in Tenn. Code Ann. §29-20-203, would not include a sewer project construction site, as the injury did not involve the actual use of the street. While this Court in *Johnson* also discussed the provisions of Tenn. Code Ann. §29-20-204, dealing with public improvements owned by the governmental entity, it did not analyze whether these provisions would apply to said sewer project, but instead reasoned that the municipality had no duty where it had hired an independent contractor to do the work, and retained no control over the site. *Id.*

In *McGaughy v. City of Memphis*, 823 S.W.2d 209 (Tenn. Ct. App. 1991), this Court found that where the City had installed uninsulated high power lines over property that was used for lumber yard and utilized tall stacking equipment to move the lumber, and had not posted warning signs, the governmental immunity would be removed, because it should have been apparent to the City that this was a dangerous condition that could result in tragedy. The Court relied on Tenn. Code Ann. §29-20-204, and found that even though the lines were not in a defective condition, it was still foreseeable that the tall equipment could make contact with the uninsulated line, causing a dangerous

condition.

Here, this gas line which the defendants had agreed to remove and cap per plaintiff's request was put back into service and made "hot", without plaintiff's knowledge, and both defendants knew plaintiff would have to return and perform further excavation. As such, it was reasonably foreseeable that an accident such as this could occur, and negated the City's immunity. Moreover, this issue was not specifically raised in the Motion for a New Trial.

Based upon the erroneous jury instructions, we remand the case for a new trial. This Court has previously said:

> The necessity of jury instructions based on a clear and sound exposition of the law in order for a jury verdict predicated upon those instructions to stand is a long standing principle of Tennessee law. "The parties are entitled to a clear and consistent charge, as well as a correct one, that justice may be reached." A verdict will be reversed if it can be shown that an instruction contains an inaccurate statement of the law or is confusing and, considering the charge of the court as a whole, that the error was not harmless, i.e. that the instruction more likely than not affected the outcome of the trial.

*Godbee v. Dimick*, 213 S.W.3d 865 (Tenn. Ct. App. 2006). The record substantiates that the charges made impacted on the jury as evidenced by the jury's question about that portion of the charge during deliberations. The jury's verdict is vacated, and the cause will be remanded for a new trial.

The other issues regarding jury instructions and discretionary costs are rendered moot by this determination.

Defendants argue that Dr. Sissom should not have been allowed to opine that the defendants were negligent in failing to warn Ward of the re-connection of the gas line, and he should not have been allowed to testify regarding his interpretation of the One-Call statute. Plaintiffs respond that Sissom provided the jury with important evidence regarding the design of the gas line, the purpose of having two feeds, and the appropriate safety standards.

The record establishes that Sissom was qualified to testify as an expert in the field of engineering, and could testify regarding the standards in that industry as they related to the issues in this case. However, we agree with the defendants that he should not have been allowed to testify regarding his interpretation of the One-Call statute, especially where such was in direct contradiction to the statute's language. By testifying that it would have been prudent for Ward to call the One-Call system, but that he was not required to do so, Sissom basically reached an impermissible legal conclusion. *See, Dempsey v. Correct Mfg. Corp.*, 755 S.W.2d 798 (Tenn. Ct. App. 1988). We hold that Sissom should not have been allowed to give his interpretation of the One-Call statute, but

-8-

otherwise his testimony as an expert in the field should be allowed.

For the foregoing reasons, we vacate the Trial Court's Judgment and remand for a new trial.  The cost of the appeal is assessed to the plaintiffs Robert and Sally Ward.

_____
HERSCHEL PICKENS FRANKS, P.J.