IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 19, 2020 Session

## KIMBERLY SUE NOLAND v. MATTHEW COOK, ADMINISTRATOR AD LITEM OF ESTATE OF RONNIE SUE LOWE

Appeal from the Circuit Court for Sevier County
No. 15-CV-751-I    Carter Scott Moore, Judge

_____

### No. E2019-01170-COA-R3-CV

_____

This is an appeal from a personal injury case where the trial court entered a directed verdict on liability and where the jury returned a verdict awarding the plaintiff $0 in damages. The trial court denied the plaintiff's motion for a new trial or, in the alternative, for additur. On appeal, the plaintiff argues that the trial court erred in not giving the jury an instruction that she was entitled to damages for medical evaluation and diagnostic expenses following her motor vehicle accident and that there is no material evidence to support the jury's verdict because the unrefuted expert testimony indicated she had suffered an injury and had incurred medical evaluation and diagnostic expenses following the accident. Finding no error by the trial court or with the jury's verdict, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

H. Douglas Nichol, Knoxville, Tennessee, for the appellant, Kimberly Sue Noland.

David Hollow, Knoxville, Tennessee, for the appellee, Estate of Ronnie Sue Lowe.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

This case involves a personal injury action brought by Kimberly Noland ("Plaintiff") as a result of a motor vehicle accident that occurred on October 23, 2014 in Sevier County, Tennessee. According to Plaintiff, a car driven by Ronnie Lowe

("Defendant") came over into her lane and struck her vehicle. After the accident, Plaintiff stated that she began noticing sharp, tingling pains in her "neck and arm." Plaintiff refused an ambulance, and her cousin took her home. When the pain did not subside, her cousin drove her to the University of Tennessee Medical Center Emergency Room where she had an x-ray and CT scan performed. Plaintiff then followed up with her family doctors at Cherokee Health Systems, who referred her to Dr. Joshua Miller. Upon Dr. Miller's recommendation, Plaintiff had neck surgery on January 6, 2016. While Plaintiff did notice an overall improvement following the surgery, she continued to complain of pain in both of her arms.

Prior to her surgery, on October 21, 2015, Plaintiff had filed a Complaint in the Sevier County Circuit Court (the "trial court"), requesting damages for the accident and alleging that Defendant failed to maintain control of her vehicle which resulted in the accident. Specifically, Plaintiff sought an award of compensatory damages in an amount not to exceed $100,000.00 for her injuries. Defendant filed her answer on November 14, 2016, wherein she admitted that she had been driving too close to the centerline but denied that she was liable for Plaintiff's alleged injuries. During the pendency of the action, Defendant died from causes unrelated to the accident. Defendant's death was suggested to the trial court on August 7, 2017. Accordingly, on November 7, 2017, Plaintiff filed an Amended Complaint in order to substitute the Defendant's estate. Ultimately, Matthew Cook (hereinafter "Defendant") was appointed as administrator of the estate for the sole purpose of defending this action.

The case was tried before a jury on February 21 and 22, 2019. On direct examination, Plaintiff testified that, while she had neck and arm pain prior to the accident, the pain she experienced after the accident was more severe. Plaintiff also testified that she could no longer "do the things that I used to enjoy doing" such as driving professionally.[1] On cross examination, Defendant presented Plaintiff with numerous medical records, many of which indicated that Plaintiff had complained about pain in her neck and arms—specifically numbness and tingling sensations—prior to the October 23, 2014 accident.[2] Additionally, the jury was shown Dr. Miller's video deposition testimony, wherein he testified that, ultimately, he did not know whether or not the accident caused Plaintiff's alleged injuries. At the close of proof, the trial court entered a directed verdict in favor of Plaintiff on the issue of liability. The jury, however, returned a verdict finding that Plaintiff had not proven by a preponderance of the evidence that the accident was the cause in fact of her injuries and awarded her $0 in damages. The trial court recorded its judgment on March 12, 2019. On April 8, 2019, Plaintiff filed a motion for a new trial. After a hearing on May 8, 2019, the trial court denied Plaintiff's motion for new trial by order entered on June 5, 2019. This appeal

---

[1] Plaintiff testified that, following the accident, she lost her CDL license because she cannot pass a DOT physical.

[2] Defendant entered all of these records as exhibits without objection from Plaintiff.

followed.

## ISSUES PRESENTED

Plaintiff raises four issues for our review on appeal, which we reproduce as follows:

1.  Whether there is no material evidence to support the jury's award of "zero" damages when the Appellee's liability is acknowledged and the expert medical proof before the court confirms that the Appellant incurred medical expenses for evaluation and treatment following the accident.
2.  Whether the trial court erred in requiring the jury on the verdict form to find that Appellant suffered an injury before it could assess damages.
3.  Whether the trial court erred in refusing to instruct the jury as to Plaintiff's Special Request Charge No. 2 regarding awarding of damages for reasonable and necessary medical expenses to determine if an injury had occurred.
4.  Whether the trial court erred in allowing the jury to receive during its deliberations the medical record of other medical providers and the Social Security records containing information which was immaterial, irrelevant and hearsay.

## DISCUSSION

### A. Whether There is Material Evidence to Support the Jury Verdict

Plaintiff's first issue on appeal is whether there is material evidence to support the jury's award of $0 in damages. As we perceive it, Plaintiff is raising two separate, yet related, issues, which we restate as follows: (1) that there is no material evidence to support the jury's verdict finding that her alleged injuries were not caused by the accident, and (2) that even if her injuries were not caused by the accident, she is nevertheless entitled to recover the reasonable expenses she incurred to determine if an injury had been sustained. The standard of review when examining a jury verdict approved by the trial court is whether there is any material evidence to support the verdict. Tenn. R. App. P. 13(d); *Cooper v. Tabb*, 347 S.W.3d 207, 217 (Tenn. Ct. App. 2010). To determine whether material evidence supports the jury's verdict, this court must: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 398, 704 (Tenn. 2000) (citing *Crabtree Masonry Co., Inc. v. C. & R. Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)). We address each of these first two issues in order.

At trial, Plaintiff denied that she had experienced neck problems prior to the

accident. Similarly, Plaintiff admitted that she had experienced tingling in her right arm prior to the accident, but that "it was a different kind" than that she experienced after the accident.[3] However, on cross examination, Defendant presented Plaintiff with several of her medical records that originated prior to the October 23, 2014 accident, some of which include the following: a medical record from Riverside Methodist Hospital, dated October 24, 1996, wherein Plaintiff stated that she had injured her neck and arms while lifting a box; a Functional Report from the Social Security Administration, dated September 9, 2011, wherein Plaintiff complained that she could "hardly do anything without chronic pain throughout my entire body"; a record from the office of Dr. K. Patel, dated July 30, 2013, wherein Plaintiff complained of neck pain; a record from the office of Dr. Kevin Bailey, dated August 26, 2013, wherein Plaintiff complained of pain in the "neck, shoulders, arms, back, hips and legs"; and multiple medical records from Cherokee Health Systems—one of which is dated March 11, 2014, approximately seven months prior to the accident—wherein Plaintiff complained of chronic pain throughout her entire body and tingling sensations in her arms and legs.[4]

The jury was also shown Dr. Miller's video-taped deposition, during which he offered the following opinion as to Plaintiff's injury:

> Q: Do you have an opinion, within a reasonable degree of medical certainty, as to whether or not that automobile accident was a cause of the problems that you have treated her for just described to the jury?
> A: Sure. With that type of accident or any type of whiplash type injury like that, yes, I do think it could definitely cause an exacerbation of symptoms. So even though that—even if that disc herniation was there from prior, her body may have been dealing with that okay until this incident where, you know, this whiplash type injury then caused an irritation of the nerve which then, you know, caused the pain and numbness to continue after that.

After Defendant's counsel presented Dr. Miller with the aforementioned records documenting Plaintiff's medical history prior to the accident, however, he ultimately concluded that he did not know whether or not the accident caused Plaintiff's alleged injuries:

> Q: But whether or not this accident caused this problem or whether or not this was an ongoing issue that she had for some time or maybe it developed after the accident, we don't know, do we necessarily?
> A: No. Correct. I have to rely on her reports of what she has complained

---

[3] Plaintiff was also presented with her response to an interrogatory, wherein she was asked whether any of her injuries or conditions she alleged in the complaint existed prior to the October 24, 2014 accident, to which she responded "No."

[4] Defendant entered all of these records as exhibits without objection from Plaintiff.

of.
Q: Right. And she certainly has an ongoing pathology in her neck before this accident that is causing her problems, pain?
A: Uh-huh.
Q: Yes?
A: Yes.

Moreover, Dr. Miller conceded that all of his information regarding the cause and origin of Plaintiff's alleged injuries came from Plaintiff herself:

Q: And [Plaintiff is] complaining of neck pain before the accident, isn't she?
A: Correct.
Q: And we know she's complaining of tingling in both her arms before the accident, isn't she?
A: Correct.
Q: So those symptoms were ongoing before this wreck occurred?
A: Right. With the exception of the pain that she had when she saw me.
Q: Well, and we don't necessarily know when that pain started, do we, doctor?
A: No. We just have her report of the timing of it.
Q: What she told you?
A: Right

As this Court has stated, if an expert's testimony concerning a plaintiff's injuries is based solely on the subjective complaints of the plaintiff, and if the jury ultimately determines that the plaintiff lacks credibility, then the jury need not accept that expert's testimony. *See Roach v. Dixie Gas Co.*, 371 S.W.3d 127, 150 (Tenn. Ct. App. 2011).[5] This rationale is illustrated in the case of *Wilhoit v. Rogers*. There, Ms. Wilhoit, the plaintiff, sued a truckdriver following an automobile accident, for which the latter admitted fault. *Wilhoit v. Rogers*, No. E2012-00751-COA-R3-CV, 2013 WL 3717425, at *1-2 (Tenn. Ct. App. July 12, 2013). Among other injuries, Ms. Wilhoit claimed that,

---

[5] We articulated the rationale for this rule in more detail in *Baxter v. Vandenheovel*:

We do not fault the general rule that undisputed medical proof may not be ignored by the jury. However, we are of the opinion that the general rule does not apply when the medical opinion is based upon purely subjective findings. A reading of the medical testimony shows clearly that the doctor based his opinion on statements given him by Mrs. Baxter as to when her pain or complaints ceased and/or commenced. Basically, in this case, the doctor's opinion is based upon his assessment of Mrs. Baxter's credibility. Such credibility is ordinarily for the jury and the jury in this case was not bound to accept the medical testimony.

*Baxter v. Vandenheovel*, 686 S.W.2d 908, 912 (Tenn. Ct. App. 1984).

following the accident, she began to experience pain in her jaw. *Id.* at *3-4. Dr. Karnes, a dentist who specialized in the treatment of TMJ issues, opined that all of Ms. Wilhoit's problems were caused by the accident. *Id.* at *5. Dr. Karnes, however, admitted that his opinion was based solely on the medical history that Ms. Wilhoit had provided him. *Id.* at *6. In concluding that there was material evidence to support the jury's verdict that Ms. Wilhoit should receive no compensatory damages for the claimed injuries pertaining to her jaw, we stated as follows:

> Dr. Karnes stated that his opinion regarding the origin of Ms. Wilhoit's TMJ problems was based solely on her subjective complaints and the history she provided. That history was proven to be inaccurate, and the jury had the prerogative to assess Ms. Wilhoit's credibility and determine whether there existed an adequate basis for the health care provider's diagnosis when that determination was based solely on subjective information.

*Id.* (citing *Roach*, 371 S.W.3d at 150-51).

Here, despite testifying that her alleged injuries from the accident were "different" than those that existed prior to the accident, the jury heard ample testimony as to how Plaintiff's pre- and post-accident complaints were substantially similar, if not the same. Further, Dr. Miller admitted that he did not know whether or not the accident caused Plaintiff's alleged injuries and that his opinion as to the cause and origin of Plaintiff's alleged injuries were based on the subjective complaints of Plaintiff herself. Additionally, he admitted that he never reviewed Plaintiff's presentation at the UT Medical Center Emergency Room on the day of the accident. Accordingly, the jury had the "prerogative to assess" Plaintiff's credibility and determine whether there existed an adequate basis for Dr. Miller's opinion. Based on the testimony and case law detailed above, we conclude that there was ample material evidence to support the jury's verdict that the accident did not cause the alleged injuries to Plaintiff.

Next, we address Plaintiff's argument that, even if there is material evidence to support the jury's finding that the accident did not cause her alleged injuries, she is nevertheless entitled to recover the medical evaluation and diagnostic expenses incurred to determine if she had, in fact, sustained an injury. Specifically, Plaintiff argues that there is no material evidence to support the jury's award of $0 in damages because the expert medical proof is unrefuted and uncontradicted that she incurred medical expenses for evaluation and treatment for her injuries following the accident. In support of her argument, Plaintiff cites to *Newsom v. Markus*, wherein this Court stated that, "[g]enerally, a party is entitled to recover reasonable medical expenses for examinations, etc., in an effort to determine if personal injuries were sustained as a result of defendant's negligence, even though it develops that the party suffered no personal injury." *Newsom v. Markus*, 588 S.W.2d 883, 887 (Tenn. Ct. App. 1979).

Similar to the case presently before us, *Newsom* involved an automobile accident in which the defendant's liability was undisputed. *Id.* at 886-87. The evidence presented at trial showed that, a few days after the accident, Mr. Newsom took his wife to the hospital to determine whether she had suffered any injuries, which resulted in a hospital stay of approximately one week and medical bills totaling $897.75. *Id.* at 888. The jury returned an award of $950.00 for Mr. Newsom alone and provided no compensation for Mrs. Newsom. *Id.* at 884. After a motion for new trial was denied, the plaintiffs appealed.

On appeal, the plaintiffs argued that the jury's awarding Mr. Newsom $950.00—while denying Mrs. Newsom any relief—was "contradictory and inconsistent" and that an award of damages in favor of the former required a similar award of damages for the latter. *Id.* at 885. We disagreed, noting that, because the record contained evidence of Mrs. Newsom's extensive history of back problems as well as conflicting testimony by Mrs. Newsom and her treating doctors, it was reasonable for the jury to determine that she had suffered no physical injury. *Id.* at 885-86. Additionally, we addressed the jury's award of $950.00 to Mr. Newsom, explaining that Tennessee had not previously addressed the question of whether a plaintiff could recover for medical evaluation and diagnostic expenses incurred in determining whether an injury had occurred. *Id.* at 887. We specifically held as follows:

> [I]t was reasonable for Mr. Newsom to take her to a hospital and have necessary examinations, X-rays and other diagnostic procedures to determine if she suffered injury in the collision. This expense flowed naturally from the tortious act of the defendant and is recoverable even though it [was] found by the jury that Mrs. Newsom in fact suffered no injury.

*Id.*[6]

---

[6] With respect to the difference between Mrs. Newsom's total medical expenses and the amount awarded to Mr. Newsom, we noted as follows:

> The jury awarded Mr. Newsom $950 damages. We hold that this award is justified by the proof of medical expenses incurred for the initial examination and evaluation of Mrs. Newsom after the accident. We do not know that the jury made this award for that purpose. However, when we consider the jury's request for the medical expenses and the amount of the award, we can reasonably conclude that the jury meant to compensate Mr. Newsom for those expenses. The award exceeds the proven medical bills by only $52.25, which amount could be reasonably allowable as expenses of Mr. Newsom going back and forth from the hospital during those seven days that Mrs. Newsom was hospitalized.

> *Id.* at 888.

We reexamined this question in *Watson v. Payne*. *Watson* involved an automobile accident where, like *Newsom* and the case presently before us, the liability of the defendant was not at issue. *Watson v. Payne*, 359 S.W.3d 166, 168 (Tenn. Ct. App. 2011). The jury, however, awarded Ms. Watson $0 in damages. *Id.* Ms. Watson filed a motion to set aside the judgment and for a new trial and/or a motion to alter or amend the damage award. *Id.* Specifically, Ms. Watson prayed for a new trial or, in the alternative, an additur in an amount equaling to "at least Plaintiff's past medical bills which were undisputed and some future medical bills." *Id.* The trial court denied Ms. Watson's motion, and she appealed.

On appeal, we restated Ms. Watson's argument as follows: "that the jury's award of damages in the amount of 'zero' is not supported by the material evidence where damages for evaluation and some treatment for pain following the accident were unrefuted." *Id.* at 169. The record on appeal contained the testimonies of Dr. Stahlman, who testified on behalf of the defendant, and Dr. Mehta, Ms. Watson's physician. *Id.* Dr. Mehta testified that he began treating Ms. Watson for chronic lower back pain in 2006 and that the accident had aggravated this pre-existing condition. *Id.* Additionally, he testified that the accident "necessitated the medical tests and subsequent treatment received by Ms. Watson." *Id.* Dr. Stahlman, an orthopedic surgeon, similarly testified that the MRI obtained to evaluate her for a head injury subsequent to the accident was reasonable and necessary. *Id.* However, while he did not dispute the necessity of evaluating Ms. Watson for injuries following the accident, Dr. Stahlman testified "that Ms. Watson's medical records 'suggest[ed]' that her pain was caused by degenerative conditions and arthritis." *Id.* While this Court found that "[t]he record in this matter contains material evidence to support the jury's finding that Ms. Watson sustained no personal injuries" as a result of the accident at issue, we ultimately held the following:

> We find that the jury's award of $0 was not within the range of reasonableness in this case. The evidence in the record, including the expert proof offered by [the defendant], supports an award of damages to Ms. Watson in an amount minimally equal to medical expenses incurred to evaluate her for injuries following the collision . . . . Ms. Watson has not been compensated for expenses arising from post-accident evaluation, *and the medical experts appearing on behalf of both parties agreed that such expenses were both reasonable and necessary. There is no evidence in the record to refute the experts' testimony.*

*Id.* at 170 (emphasis added). Accordingly, we held that there was "no material evidence to support the jury's award of damages in the amount of $0 because it fails to compensate Ms. Watson for expenses which are unrefuted by the proof." *Id.* at 170-71. Noting that it is not within the authority of this Court to award an additur,[7] we vacated the trial court's

---

[7] While the appellate courts may suggest a remittitur where the trial court has not, *see Coffey v.*

order denying Ms. Watson's motion for a new trial or, in the alternative, for an additur and remanded the matter for further consideration. *Id.* at 171.

While the *Watson* case supports our holding in *Newsom* that "a party is entitled to recover reasonable medical expenses for examinations, etc., in an effort to determine if personal injuries were sustained as a result of defendant's negligence, even though it develops that the party suffered no personal injury[,]" *Newsom*, 588 S.W.2d at 887, we have declined to extend such holding where the expert medical proof regarding such expenses was refuted and contradicted. In *Hughes v. Hudgins*, Mr. Hughes, the plaintiff, claimed that he suffered neck and back pain after an automobile accident, for which the defendant had admitted fault. *Hughes v. Hudgins*, No. E2008-01385-COA-R3-CV, 2009 WL 2502001, at *2-3 (Tenn. Ct. App. Aug. 17, 2009). The jury found that none of the injuries alleged by Mr. Hughes were caused by the accident and awarded him $0 in damages. *Id.* at *3. After the trial court denied his motion for a new trial, Mr. Hughes appealed.

On appeal, this Court stated that there was material evidence in the record to support the jury's verdict. *Id.* at *4. Like the *Watson* case, we noted that there was evidence that Mr. Hughes had suffered from numerous medical problems prior to the accident, including neck and shoulder pain. *Id.* However, like Plaintiff in the case presently before us, Mr. Hughes argued that, because the defendant admitted fault for the accident and because he was brought by ambulance immediately after the accident to be checked out in the emergency room, he was "at the very least entitled to recover those costs as damages." *Id.* at *6. Specifically, we restated Mr. Hughes argument as follows:

> Mr. Hughes urges us to adopt a bright line rule that if a party is involved in an accident caused by the fault of another and he goes to the emergency room after the accident, he should automatically be entitled to recover the expenses incurred to determine if he has been injured, even if no injury is diagnosed.

*Id.* at *7. While we stated that "a strong argument might be made for such a rule," we held that "there is an even stronger argument for letting the question remain in the hands of the jury[,]" and we ultimately affirmed the jury's verdict awarding him $0 in damages. *Id.*

As alluded to earlier, the significant and distinguishing factor in *Hughes* was the lack of unrefuted and uncontradicted expert proof as to the reasonableness and necessity of the medical evaluation and diagnostic expenses incurred by the plaintiff following the accident, whereas in *Watson*, the defendants offered no proof to rebut the expert

---

*Fayette Tubular Prods.*, 929 S.W.2d 326, 331 (Tenn. 1996), "the appellate courts have no express statutory authority to initiate an additur." *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980).

testimony that such expenses were reasonable and necessary. *See Watson*, 359, S.W.3d at 170 ("Ms. Watson has not been compensated for expenses arising from post-accident evaluation, and the medical experts appearing on behalf of both parties agreed that such expenses were both reasonable and necessary. There is no evidence in the record to refute the experts' testimony."). In *Hughes*, Mr. Hughes' expert testified that he "immediately began a course of injections to [Mr. Hughes'] cervical, thoracic and lumbar spines" following the accident and that "all the treatment he administered to Mr. Hughes was reasonable and necessary[.]" *Hughes*, 2009 WL 2502001, at *3. The defendant's expert, however, testified that "the medical guidelines for treatment of neck and upper back pain do not include facet injections" and that "such injections are not recommended for complaints such as those presented by Mr. Hughes." *Id.* at *5. Accordingly, together, our holdings in *Watson* and *Hughes* stand for the proposition that, even when there is material evidence to support a jury's determination that the plaintiff sustained no injuries following an accident, the plaintiff is nevertheless entitled to an award of damages in an amount minimally equal to the medical expenses incurred to evaluate for injuries following the accident, so long as there is unrefuted and uncontradicted proof that such expenses are reasonable and necessary. Accordingly, we must determine whether the record on appeal contains unrefuted and uncontradicted proof from Dr. Miller that the medical evaluation and diagnostic expenses incurred by Plaintiff following the accident were reasonable and necessary.[8] Based on the deposition testimony of Dr. Miller, we conclude that the proof in this record does not support such a conclusion.

During his deposition, Dr. Miller was asked about certain expenses, including a $4,769.09 bill from UT Medical Center for Plaintiff's trip to the ER on the day of the accident as well as a $57,696.20 bill—also from UT Medical Center—for Dr. Miller's neck surgery that he performed on Plaintiff on January 6, 2016. These expenses were offered together as one exhibit. Specifically, Dr. Miller testified as follows regarding Exhibit 5:

> [Plaintiff's counsel]: Let me ask you, Doctor, do you have an opinion, within a reasonable degree of medical certainty, as to whether or not the charges that are listed there [in Exhibit 5] for her, Ms. Noland, are—were reasonable and necessary in regards to the injuries she sustained in this automobile case?
> [Defendant's counsel]: Object to the form of the question.
> [Dr. Miller]: Yea, *I didn't look through specifically at each billing*, but when I look through the general numbers here and compare it to past billings that I've seen I think they look reasonable.
> [Plaintiff's counsel]: Do you feel that they were necessary in regards to her

---

[8] Plaintiff acknowledges proof of "reasonable and necessary" expenses as the required standard for recovery. In fact, Plaintiff states in her brief on appeal that "[i]n order to be recoverable, medical expenses must be reasonably necessary."

treatment for these injuries?

[Defendant's counsel]: Object to the form of the question.

[Dr. Miller]: In regards *to my treatment* of the patient and her treatment at the UT Hospital, I think yes, it was reasonable and necessary.

(Emphasis added). Dr. Miller admitted that he "didn't look through specifically at each billing" and only "look[ed] through the general numbers" in forming his opinion that the charges were reasonable.[9] Compared to the experts' testimony in *Watson*,[10] Dr. Miller's testimony is more ambiguous. Moreover, it is unclear whether Dr. Miller is referring to the bills associated with Plaintiff's visit to the UT Medical Center Emergency Room, those associated with his own treatment of Plaintiff at UT Medical Center, or both. For the foregoing reasons, we deny Plaintiff any relief on this issue.

## B. Jury Verdict Form and Instructions

Plaintiff's next two issues pertain to the verdict form and jury instructions provided by the trial court. Here, the jury verdict form asked the following question: "Did you find that the Plaintiff has proven by a preponderance of the evidence that the automobile accident was the cause in fact of her alleged injuries?"[11] Plaintiff contends that this question is defective in that it "erroneously requires the Plaintiff to prove an injury before damages can be awarded." More specifically, Plaintiff argues that the verdict form incorrectly directs the jury to return a verdict for Defendant "without considering necessary and reasonable medical expenses incurred to determine if an injury was sustained." Plaintiff also argues that the trial court refused to instruct the jury as to her special requested charge, which reproduced the general statement from the *Newsom v. Markus* case that, "[g]enerally, a plaintiff in a negligence action is entitled to recover reasonable expenses for medical examinations to determine if the plaintiff sustained injuries, even where it is determined that the plaintiff sustained no injury." According to Plaintiff, "[t]his instruction is a correct statement of the well-established law in Tennessee and the jury should have been so instructed."

"We review the jury charge in its entirety and as a whole to determine whether the trial judge committed reversible error." *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897, 908 (Tenn. Ct. App. 2001) (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)). Additionally, as this Court has previously stated:

The necessity of jury instructions based on a clear and sound exposition of

---

[9] And, as noted earlier, Dr. Miller admitted that he never reviewed Plaintiff's presentation at the UT Medical Center Emergency Room on the day of the accident nor the individual billing.

[10] Specifically, the experts in *Watson* testified that the accident at issue "necessitated the medical tests and subsequent treatment received by Ms. Watson" and that "the MRI obtained to evaluate her for a head injury subsequent to the collision was reasonable and necessary." *Watson*, 359 S.W.3d at 169.

[11] Additionally, the form provided that "[i]f your answer is 'no', stop here[.]"

the law in order for a jury verdict predicated upon those instructions to stand is a long standing principle of Tennessee law. "The parties are entitled to a clear and consistent charge, as well as a correct one, that justice may be reached." A verdict will be reversed if it can be shown that an instruction contains an inaccurate statement of the law or is confusing and, considering the charge of the court as a whole, that the error was not harmless, i.e. that the instruction more likely than not affected the outcome of the trial.

*Ward v. City of Lebanon*, 273 S.W.3d 628, 636 (Tenn. Ct. App. 2008) (quoting *Godbee v. Dimick*, 213 S.W.3d 865, 880 (Tenn. Ct. App. 2006)). After our review of the verdict form and Plaintiff's special requested charge, we discern no reversible error in the trial court's actions.

With regard to Plaintiff's argument that the trial court erred in instructing the jury to return a verdict for Defendant without considering medical evaluation and diagnostic expenses, we find that the alleged error—if any—was harmless. We are aware that, under a different set of facts, there could be both material evidence to support a jury's determination that an accident did not cause a plaintiff's alleged injuries as well as unrefuted and uncontradicted proof that plaintiff incurred reasonable and necessary medical expenses to determine whether he or she sustained an injury. These were the facts in *Watson*. *See Watson*, 359 S.W.3d at 170 (holding that, while there was material evidence to support the jury's finding that Ms. Watson sustained no injuries that were caused by the accident at issue, the jury's award of $0 was not within the range of reasonableness because there was unrefuted expert testimony that Ms. Watson's medical evaluation and diagnostic expenses were reasonable and necessary). Such a set of facts, however, does not exist in the case presently before us. Here, there is material evidence to support the jury's finding that the accident at issue did not cause Plaintiff's injuries, and, further, there is *no* unrefuted and uncontradicted proof that Plaintiff's medical evaluation and diagnostic expenses were reasonable and necessary. Moreover, Dr. Miller's testimony on the issue of the medical evaluation and diagnostic expenses is unclear and ambiguous. Accordingly, the trial court's failure to instruct the jury that such expenses may be recoverable despite Plaintiff's failure to prove causation is harmless because the instruction would "not [have] affected the outcome of the trial." *See Ward*, 273 S.W.3d at 636.

Further, while Plaintiff argues that "it is evident [the trial court's instruction] affected the jury verdict since they did not award Plaintiff her medical expenses incurred at the U.T. Medical emergency department on the day of the accident[,]" Plaintiff's argument assumes that her special requested charge contained a complete and accurate statement of the law.[12] With regard to the specific issue before us, the *Newsom*

---

[12] Plaintiff argues that the verdict form incorrectly directed the jury to return a verdict for

statement—that, generally, a plaintiff in a negligence action is entitled to recover reasonable expenses for medical examinations to determine if the plaintiff sustained injuries, even where it is determined that the plaintiff sustained no injury—is incomplete. While medical evaluation and diagnostic expenses are recoverable—even if it is found that that no injury was sustained—Plaintiff disregards the requirement that there must be unrefuted and uncontradicted proof that such expenses are reasonable *and* necessary.[13] *Dedmon v. Steelman*, 535 S.W.3d 431, 438 (Tenn. 2017) ("[T]he economic damages at issue are past medical expenses. For this type of award, a plaintiff must prove that the medical bills paid or accrued because of the defendant's negligence were both 'necessary and reasonable.'"); *West v. Shelby Cty. Healthcare Corp.*, 459 S.W.3d 33, 44 (Tenn. 2014) ("[R]ecoveries for medical expenses in personal injury cases are limited to those expenses that are 'reasonable and necessary.'"). As we noted above, we found no such proof in the record. Plaintiff's special requested charge would allow for blanket recovery for medical evaluation and diagnostic expenses, regardless of whether there is proof that such expenses were both reasonable and necessary. This Court has already declined to adopt this "bright line rule." *See Hughes*, 2009 WL 2502001, at *7. For the foregoing reasons, we decline to provide Plaintiff any relief on these issues.

### C. Jury's Access to Plaintiff's Medical and Social Security Records

Lastly, we address Plaintiff's argument that the trial court "erred in allowing the jury to receive during its deliberations the medical records of other medical providers and the Social Security records." Specifically, Plaintiff argues that most of the information contained in the records were not presented through oral testimony and, as such, the jury "was able to read and reread the documents but not able to hear and rehear the oral testimony." We find Plaintiff's argument meritless.

As noted previously, Plaintiff denied that she had experienced neck problems prior to the accident, and she admitted that she had experienced tingling in her right arm prior to the accident—but that "it was a different kind" than that she experienced after the accident. Plaintiff's own testimony opened the door to cross-examination, which Defendant accomplished by using her own pre-accident medical records. To the extent Plaintiff is arguing such information was not relevant is meritless. It is well-settled that

> [r]elevant evidence is defined by Rule 401 of the Tennessee Rules of
> Evidence as "evidence having any tendency to make the existence of any

---

Defendant "without considering *necessary and reasonable* medical expenses incurred to determine if an injury was sustained." (emphasis added). Plaintiff, however, also argues that the trial court refused to instruct the jury as to her special requested charge, which simply states that a plaintiff in a negligence action is entitled to recover *reasonable* expenses for medical examinations to determine if the plaintiff sustained injuries.

[13] Our holding does not abrogate the *Newsom* statement. Rather, the language clearly indicates that the recovery of such expenses may require certain qualifications, depending on the circumstances.

fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "In other words, evidence is relevant if it helps the trier of fact resolve an issue of fact." Neil P. Cohen, et al., Tennessee Law of Evidence § 4.01[4], at 4–9 (5th ed. 2005).

*Howe v. Howe*, No. E2016-01212-COA-R3-CV, 2017 WL 1324177, at \*4 (Tenn. Ct. App. Apr. 10, 2017). Further, "the elements of causation in fact and proximate cause are matters to be resolved by the trier of fact." *Watson*, 359 S.W.3d at 168 (citing *Hale v. Ostrow*, 166 S.W.3d 713, 716-19 (Tenn. 2005)). Clearly, Plaintiff's pre-accident medical history is highly relevant to the jury's determination of whether the accident at issue caused her alleged injuries.

To the extent that Plaintiff is arguing that the submission of the medical records to the jury "created an unfair advantage[,]" we also find this argument meritless. Plaintiff even admits in her brief on appeal that her counsel "had an opportunity to monitor the portions read by Defendant's counsel during the oral testimony to assure compliance with the rules of evidence and procedure" but that she "lost that ability once the complete and unread records were sent to the jury room." Plaintiff, however, raised no objection while Defendant entered all of these records as exhibits. For an evidentiary objection to be considered timely, it must be made either in a motion in limine or "at the time the objectionable evidence is about to be introduced." *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000). Here, Plaintiff did neither. If a party "invites or waives error" or "fails to take reasonable steps to cure an error," he or she "is not entitled to relief on appeal." *Id.* (citing Tenn. R. App. P. 36(a)). Moreover, as we have previously stated, "[a]bsent extraordinary circumstances, a trial judge cannot be reversed for the admission of inadmissible evidence unless a timely objection or motion to strike appears of record, stating the specific ground of objection." *State ex rel. City of Lafayette v. Mowell*, No. 01–A–01–9810–CV00520, 1999 WL 536304, at \*1 (Tenn. Ct. App. July 27, 1999). Because Plaintiff failed to raise any objection at the time of trial, we decline to provide her any relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

_____
ARNOLD B. GOLDIN, JUDGE
